KAUTZ, Justice.
[¶1] Evertson Fiduciary Management Corporation (EFM), as Trustee of the Bruce F. Evertson Dynasty Trust (Trust), filed a "Petition for Instructions" with the district court asking the court to confirm its general authority to decant trust property under Wyoming law and the Trust Agreement, as well as the court's approval of its proposal to decant the Trust's property into two separate trusts.[1] It then filed a "Motion for Judgment Granting its Petition for Instructions," which it claimed to be akin to a motion for judgment on the pleadings under Rule 12(c) of the Wyoming Rules of Civil Procedure (W.R.C.P.). Over the objection of Edward Evertson, one of the Trust's beneficiaries, the district court granted EFM's motion. It concluded decanting is generally permissible under Wyoming law and the Trust Agreement but also resolved disputed questions of material fact concerning the propriety of EFM's proposed decanting, including that it was consistent with the Settlor's intent and the Trust's purpose.
[¶2] On appeal, the parties agree the only issue before the district court on EFM's motion for judgment on the pleadings was the discrete legal question of whether EFM has the general authority to decant trust property under Wyoming law and the Trust Agreement. Because the district court's order went beyond that discrete legal question, we affirm in part and reverse in part.
*707 ISSUE
[¶3] Whether the district court, on a motion for judgment on the pleadings, erred in resolving disputed questions of material fact concerning the propriety of EFM's proposed decanting.
FACTS
[¶4] On December 21, 2012, Bruce F. Evertson (Bruce) created the Bruce F. Evertson Dynasty Trust (Trust) for the benefit of his wife, Darla D. Evertson (Darla), his children, Julie A. Wamsley (Julie) and Edward A. Evertson (Edward), and Julie's and Edward's descendants.[2] The Trust Agreement names EFM, a Wyoming corporation, as Trustee. The primary asset of the Trust consists of approximately 2,300 acres of recreational and ranch property (the Ranch) located in Garden County, Nebraska.[3] On February 4, 2014, approximately a year after creating the Trust, Bruce was killed in an automobile accident. He was survived by Darla, Edward, and Julie.[4]
A. EFM's Petition for Instructions
[¶5] On September 20, 2017, EFM filed a "Petition for Instructions" with the district court, requesting "an instruction ... confirming that [EFM], in its capacity as trustee of the Trust, may make distributions of Trust property in further trust for the benefit of the Trust's beneficiaries, also known as 'decanting.' " It also sought the court's approval of its proposal to decant the Trust property into two separate trusts (the Decanter Trusts) as follows: (1) a parcel of the Ranch, known as the "Watts" property, would be placed into a yet-to-be-formed limited liability company and the interests of the company would be distributed to Edward as trustee of a new trust created for the benefit of Edward and his descendants, and (2) the remainder of the Ranch would be distributed to EFM as trustee of a new trust created for the benefit of Darla, Julie, and Julie's descendants. According to the Petition, the Watts property represented 17.2% of the Ranch and was the only section of the Ranch with cash flow potential. The portion of the Ranch being placed in Darla and Julie's Decanter Trust operated at a loss, but Darla and Julie had agreed to use their personal assets to ensure its continued operation.
[¶6] EFM alleged Bruce's "untimely and unexpected death caused the Trust to be inadequately funded for its intended purposes." It also claimed the Trust had "reasonably maximized" its "income earning potential." The Trust had an oil and gas lease with Evertson Well Service, Inc., but it expired on December 31, 2016, and Evertson Well Service had declined to renew it. The Trust received a modest income from cattle ranching and the leasing of farm land, but such income was insufficient to cover its operating expenses. Moreover, EFM "desire[d] to continue observing the Settlor's general intentions that the Ranch not be used for commercial hunting to generate income."[5]
[¶7] EFM also averred the Trust's operating expenses "are currently as reasonably efficient as they can be without causing detriment to the operation of the Ranch ...."
*708 According to the Petition, "[t]o enable continued funding of its operations to date, the Trust has borrowed funds from a company that is ultimately beneficially owned by Darla Evertson, Julie Wamsley, and Julie Wamsley's descendants." While the Trust could repay "some of the indebtedness currently outstanding," it would not be able to fully repay "future indebtedness" and, as a result, the company was not willing to continue to lend to the Trust. EFM further alleged that although it had elected not to be compensated for its services as Trustee, it would begin charging for its services if the proposed decanting was not permitted.
[¶8] EFM identified three purposes for the proposed decanting: "(1) allowing Trust property to continue to be enjoyed by the Settlor's intended beneficiaries with favorable transfer tax and asset protection treatment for as long as possible;[6] (2) solving the current uneconomic and impossible circumstances of the Trust due to it having been unintentionally underfunded by the Settlor[;] and (3) allowing the Settlor's intended beneficiaries to enjoy trust assets in an amicable manner by separating beneficiaries who do not get along with each other." (Footnote added.)
[¶9] In support of its authority to decant, EFM pointed to Paragraph 2.1.2 of the Trust Agreement:
During the Settlor's Wife's life, the Trustee shall distribute to one or more of the Settlor's Wife and the Settlor's descendants as much of the net income and principal of the trust as the Trustee may at any time and from time to time determine, in such amounts or proportions as the Trustee may from time to time select, for any purpose.
EFM also claimed the proposed decanting was "authorized under Wyoming law," "in the best interests of the beneficiaries" and "consistent with the intent of the Settlor."
[¶10] Darla and Julie agreed with the Petition's allegations and confirmed their willingness and ability to "secure funds necessary to pay for the ownership and operation of the trust assets that will be in their decanter trust." Edward, however, objected to the Petition, claiming the proposed decanting (1) contradicted Bruce's intent and the Trust Agreement, (2) was not permitted under Wyoming law, (3) constituted a breach of EFM's duty of impartiality, and (4) was based on a flawed appraisal.[7] He sought a full accounting of the Trust's assets to evaluate the proposed decanting.
B. EFM's Motion for Judgment Granting Its Petition for Instructions
[¶11] EFM subsequently filed a "Motion for Judgment Granting its Petition for Instructions," which it claimed to be analogous to a motion for judgment on the pleadings under W.R.C.P. 12(c). It argued it had the authority to decant under Wyo. Stat. Ann. § 4-10-816(a) (xxviii) (LexisNexis 2019), which states:
[A] trustee may ... [d]istribute all or any portion of trust income or principal in further trust for the benefit of the trust beneficiaries pursuant to authority granted in the trust instrument to make discretionary or mandatory distributions of trust income or principal to the trust beneficiaries, whether or not the discretionary or mandatory distributions are pursuant to an ascertainable standard[.]
[¶12] EFM also claimed, under the plain terms of the Trust Agreement, its discretion concerning the distributions of income and principal is broad and includes the ability to decant. It again relied on Paragraph 2.1.2 of the Trust Agreement, which gives the Trustee the discretion to distribute, during Darla's lifetime, the Trust's income and principal "for any purpose," as well as Paragraph 8.5.9 which provides:
*709 The Trustee's discretion concerning distributions of income or principal shall be absolute and uncontrolled and subject to correction by a court only if the Trustee should act utterly without reason, in bad faith, or in violation of specific provisions of this Agreement. It is the Settlor's strong belief that the Trustee will be in the best position to interpret and carry out the intentions expressed herein under changing circumstances.
[¶13] EFM also pointed to Paragraph 8.5.13 of the Trust Agreement which states "[t]he Trustee's discretionary power to distribute income or principal includes the power to distribute all of such income and/or principal to one or more members of a class to the exclusion of others, whether or not the terms of the trust specifically mention that possibility" and to Paragraphs 2.1.4 and 9.5 which allow it to consider Darla's needs "as more important than the needs of the Settlor's descendants or any other beneficiary" and to "divide and distribute the assets of the Trust Fund in kind, in money, or partly in each, without regard to the income tax basis of any asset and without the consent of any beneficiary. The decision of the Trustee in dividing any portion of the Trust Fund between or among multiple beneficiaries shall be binding on all persons."[8]
[¶14] Darla and Julie agreed the Trust should be decanted into two separate trusts as proposed. According to them, the proposed decanting was "not 'utterly without reason, in bad faith, or in violation of specific provisions of ' the Trust." (Emphasis in original.)
[¶15] Edward opposed EFM's motion. Importantly, he did not dispute Wyoming law "generally authorizes trustees to decant." However, he disputed the appropriateness of the proposed decanting and argued material questions of fact existed as to whether it contradicted Bruce's intent, the purpose of the Trust, and the Trust Agreement's terms.
[¶16] The Trust Agreement provides:
2.1. Primary Term. The Dynasty Trust shall continue until the earlier of the Maximum Duration for Trusts defined herein [1,000 years], or the determination by the Trustee that the sale of the [Ranch] is absolutely necessary to provide for the care of the Settlor's descendants (the "Primary Term"). It is the Settlor's specific intent that the Trustee wait at least 250 years from the date of creation of this trust to consider the sale or change of use of the Ranch as set forth herein. It is the Settlor's specific intent that the Ranch shall be held by the Trustee for the benefit of the Settlor's Wife and descendants for as long as possible.
2.1.1 Until the termination of the Primary Term, the Trustee shall maintain the Ranch for the benefit of the Settlor's Wife and descendants and their guests, invitees, and licensees as the Trustee may determine.
According to Edward, these provisions "clearly express[ ] [Bruce's] intent that the Ranch, as a whole, be held in the Trust for at least 250 years, that it be maintained for the benefit and use of [Bruce's] [w]ife and descendants, ... that the Trustee wait at least 250 years before considering a change in the use of the Ranch," and the Ranch remain in the Trust unless its sale is "absolutely necessary to provide for the care of [Bruce's] descendants." Edward argued the proposed decanting was contrary to this intent because it divides the Ranch into two trusts prior to 250 years based on alleged uneconomic circumstances and prevents the beneficiaries from using the entire Ranch.
[¶17] Edward also claimed the proposed decanting was contrary to Paragraph 2.2 of the Trust Agreement, which requires the *710 Trustee, "[u]pon the termination of the Primary Term," to "continue to hold the trust in a combined fund, but shall maintain an account of each of the Settlor's descendants' per stirpital share ('Share') of the Trust." Paragraph 11.6 of the Trust Agreement further provides: "Property that is to be divided among an individual's surviving or then-living descendants 'per stirpes' or in 'per stirpital shares' shall be divided into as many equal shares as there are children of the individual who are then living or who have died leaving surviving or then-living descendants." According to Edward, if the Primary Term were to end today, he and Julie, as Bruce's only children, would each receive a 50% share of the Trust. Under the proposed decanting, however, he would only receive 17.2% of the Trust, according to EFM's calculations.
[¶18] Edward further argued there were questions of material fact as to whether the proposed decanting constituted a breach of EFM's fiduciary duties, including the duty to act impartially in managing and distributing trust property. He also disputed EFM's claim the proposed decanting was necessary because it was uneconomical to continue to hold the Ranch in the Trust, but he could not assess the accuracy of this claim without an accounting. Moreover, he claimed the Trustee's value of the Watts property was overstated because it was based on a flawed appraisal.
[¶19] In reply, EFM argued the facts Edward claimed to be in dispute were immaterial because its Petition raised only a single narrow legal issue: "[Whether it has the] authority to distribute the Trust assets to two new trusts, each of which would benefit different sets of the Trust's existing beneficiaries[.]" As to that question, Edward had not disputed that the Trust Agreement gives EFM the discretion to make distributions during Darla's lifetime to all, some, or none of the beneficiaries. Moreover, under § 4-10-816(a) (xxviii), this discretionary power gives rise to the power to make such distributions to new trusts. As a result, EFM claimed the only material facts were the genuineness of the Trust Agreement, EFM's status as Trustee, and Darla being still alive.
C. The District Court's Decision Granting EFM's Motion for Judgment
[¶20] The district court granted EFM's Petition for Instructions. It found the Trust is "underfunded," due in part to Bruce's unexpected death. It decided decanting of trust property is specifically provided for under Wyo. Stat. Ann. § 4-10-816 (a) (xxviii) and (xxx) (LexisNexis 2019). In particular, § 4-10-816(a)(xxx) (LexisNexis 2019) allows a trustee to "[s]eparate a trust for the benefit of more than one (1) beneficiary into separate trusts or shares for each beneficiary, unless the trust instrument requires the trust property be held in one (1) trust for the beneficiaries." The court determined: "There is no indication that the Settlor required the trust property be held in one (1) trust." It noted:
[T]he Trust directs that the Settlor's specific intent is to keep the Ranch 'for the benefit of the Settlor's Wife and descendants as long as possible'. Petitioner's Exhibit C , 2.1. Decanting does not necessarily disrupt this motive. This Court will instead inquire into the general intent of the Settlor in determining whether he intended for the trust to be held specifically in one (1) single Trust. Ex[x]on Mobil[ ] Corp. v. State, Dept. of Revenue , 2009 WY 139, ¶ 11, 219 P.3d 128, 134 (Wyo. 2009). Here the Trust contemplates the Trustee's ability to determine how the Ranch shall be held for the benefit of the beneficiaries and does not require one joint trust for all beneficiaries. 'See Petitioner's Exhibit C , ¶ 2.1.1 (giving the Trustee power to "maintain the Ranch ... as the Trustee may determine.' ").
(Emphasis in original.)
[¶21] The court also decided "decanting is not contrary to the overarching purpose of the trust." It concluded:
[T]he intent of the trust is clear. The circumstances surrounding the trust property changed and the Trustee is in the best position to determine-and subsequently has determined-a valid means of preserving Settlor's intentions, as the Settlor foresaw it would. See Petitioner's Exhibit C , ¶ 2.1.1. Notable, decanting is not contrary to the overall purpose of the trust.
*711 It also found: "Decanting preserves the use of the Ranch by the Settlor's wife and descendants."
[¶22] Finally, the court stated: "There is no indication that the Trustee seeks instructions in bad faith or breached its fiduciary duty. To the contrary, the Trustee acts in conformance with its power." In sum, the court concluded: "The purposes of Trust administration both under our statutes and the Settlor[']s language and intent are met by granting the Petition for Instructions."
DISCUSSION
[¶23] Our resolution of this appeal has been greatly aided by the parties' stipulations. Both parties agree Wyoming law allows a trustee to request instructions from a court concerning trust administration.[9] Wyo. Stat. Ann. § 4-10-201(c) (LexisNexis 2019) ("A judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions ...."); Restatement (Third) of Trust, § 71 ("A trustee ... may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions."); Restatement (Second) of Trusts, § 259 ("The trustee is entitled to apply to the court for instructions as to the administration of the trust if there is reasonable doubt as to his duties or powers as trustee.").
[¶24] They also agree EFM's "Motion for Judgment Granting its Petition for Instructions" was essentially a motion for judgment on the pleadings under W.R.C.P. 12(c). "A judgment on the pleadings is appropriate if all material allegations of fact are admitted in the pleadings and only questions of law remain." Newport Int'l Univ., Inc. v. Wyo. Dep't of Educ. , 2008 WY 72, ¶ 12, 186 P.3d 382, 386 (Wyo. 2008) (quotations omitted). Our review of a district court's order granting a motion for judgment on the pleadings is de novo. Ecosystem Res., L.C. v. Broadbent Land & Res., L.L.C. , 2007 WY 87, ¶ 8, 158 P.3d 685, 687 (Wyo. 2007). "The facts are reviewed in the light most favorable to the party opposing the motion and the motion is granted only if 'those facts dictate that judgment should be entered as a matter of law.' " Id . (quoting Wilson v. Town of Alpine , 2005 WY 57, ¶ 4, 111 P.3d 290, 291 (Wyo. 2005) ).
[¶25] The parties further agree the only issue before the district court was the discrete legal question of whether EFM, as Trustee, has the general authority to decant trust property under Wyoming law and the Trust Agreement. The district court answered that question in the affirmative. Edward agrees with that limited answer and so do we.
[¶26] Wyo. Stat. Ann. § 4-10-816(a) (xxviii) provides:
[A] trustee may ... [d]istribute all or any portion of trust income or principal in further *712 trust for the benefit of the trust beneficiaries pursuant to authority granted in the trust instrument to make discretionary or mandatory distributions of trust income or principal to the trust beneficiaries, whether or not the discretionary or mandatory distributions are pursuant to an ascertainable standard.
And, more applicable here, Wyo. Stat. Ann. § 4-10-816(a)(xxx) allows a trustee to "[s]eparate a trust for the benefit of more than one (1) beneficiary into separate trusts or shares for each beneficiary, unless the trust instrument requires the trust property to be held in one (1) trust for the beneficiaries."[10]
[¶27] The Trust Agreement also gives EFM the general authority to decant trust property. As already alluded to, Paragraph 2.1.2 of the Trust Agreement allows the Trustee to distribute net income and principal during Darla's lifetime "for any purpose." And Paragraph 8.5.13 gives the Trustee discretion "to distribute all of such income and/or principal to one or more members of a class to the exclusion of others, whether or not the terms of the trust specifically mention that possibility." Moreover, Paragraph 9.5 gives the Trustee the authority to "divide and distribute the assets of the Trust Fund in kind, in money, or partly in each, without regard to the income tax basis of any asset and without the consent of any beneficiary. The decision of the Trustee in dividing any portion of the Trust Fund between or among multiple beneficiaries shall be binding on all persons."
[¶28] The parties part ways, however, over whether the district court went beyond the discrete legal question presented. Edward argues it did so by resolving disputed factual issues concerning the appropriateness of the proposed decanting. While these issues may be decided in these proceedings after discovery and a trial, he maintains it was utterly improper for the court to decide them on a motion for judgment on the pleadings. As a result, Edward claims we should either limit the district court's decision to the narrow legal issue presented or, in the interests of judicial efficiency, reverse and remand to allow for discovery and a trial on the contested factual matters.
[¶29] EFM, on the other hand, argues none of the alleged factual findings by the district court were material or necessary because it did not ask the court to determine whether the court agreed with the proposed decanting but rather to simply confirm its authority under the Trust Agreement to decant assets without the prior approval of the court or any beneficiary. Indeed, it claims any arguments about a possible breach of its fiduciary duties are purely hypothetical and were not before the district court.
[¶30] EFM's interpretation of its request for relief in the district court is belied by its Petition for Instructions. The Petition specifically requested the district court to confirm EFM's authority to decant and to approve the proposed decanting:
8. Petitioner is seeking an instruction from this Court confirming that Petitioner, in its capacity as trustee of the Trust, may make distributions of Trust property in further trust for the benefit of the Trust's beneficiaries, also known as "decanting."
9. The actions to be taken by the Petitioner for which this Court's approval and confirmation are sought involve the distribution of the assets of the Trust as follows: [thereby describing the proposed decanting].
(Emphasis added). Lest there be any doubt, in the prayer for relief, EFM requested: "[T]hat the questions and/or controversies which have arisen be resolved by this Court upon a determination that ... Petitioner, as trustee of the Trust, has the ability to distribute in further trust as set forth herein ...." (Emphasis added).[11]
*713 [¶31] Perhaps not surprisingly then, the district court also went beyond the narrow legal question presented and resolved disputed issues of material fact concerning the appropriateness of the proposed decanting. The court found the Trust to be "underfunded"[12] and "[t]he circumstances surrounding the trust property [to have] changed ...." It also weighed in on the appropriateness of the proposed decanting, including that it was consistent with Bruce's intent and the Trust's purpose:
1. "There is no indication that the Settlor required the trust property be held in one (1) trust."
2. "[T]he trustee ... has determined ... a valid means of preserving Settlor's intentions."
3. "[D]ecanting is not contrary to the overarching purpose of the trust."
4. "Decanting preserves the use of the Ranch by the Settlor's wife and descendants."
5. "[D]ecanting prevents the sale of the Ranch and termination of the Trust prior to its outlined terms."
6. "The purposes of Trust administration both under [Wyoming] statutes and the Settlors language and intent are met by granting the Petition for Instructions[.]"[13]
It further decided: "There is no indication that the Trustee ... breached its fiduciary duty. To the contrary, the Trustee acts in conformance with its power."[14] Not only did these additional findings go beyond the discrete legal issue before the court, they were disputed.
[¶32] Edward agreed the Trust Agreement gave EFM broad discretion to distribute trust principal "for any purpose." However, as EFM itself recognized, its discretion is not unlimited; it is subject to court correction if "utterly without reason, in bad faith, ... or in violation of specific provisions of this Agreement." Edward disputed the reasons EFM gave for the proposed decanting, in particular, the claim it was no longer economical to keep the Ranch in the Trust and sought an accounting to determine the accuracy of that claim. He also disputed whether the proposed decanting constituted a breach of EFM's fiduciary duties.
[¶33] Additionally, Edward disputed whether the proposed decanting was consistent with the Trust Agreement, which specified Bruce intended for EFM to wait at least 250 years to consider the sale or a change of use of the Ranch and to maintain the Ranch for the benefit of Darla and his descendants for as long as possible. He also alleged the proposed decanting was contrary to the Trust Agreement's requirement that, upon termination of the Primary Term, the Trustee continue to hold the Trust in a combined fund but maintain an account of each descendant's per stirpital share. Not only were these matters disputed, they were material. See Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd. , 929 P.2d 1228, 1232 (Wyo. 1996) (a "[m]aterial fact" is "any fact which, if proved, would have the effect of establishing or refuting an essential element of the claim or defense asserted by the parties").
*714 [¶34] Wyo. Stat. Ann. § 4-10-816(a)(xxx) allows a trustee to divide a trust into separate trusts but only if the trust instrument does not require the trust property to be held in one trust for the beneficiaries. Interpretation of the Trust Agreement, therefore, is required.
[¶35] "In interpreting a trust, our primary purpose is to determine the intent of the settlor." Shriners Hosps. for Children v. First N. Bank of Wyo. , 2016 WY 51, ¶ 40, 373 P.3d 392, 406 (Wyo. 2016). See also Wells Fargo Bank Wyo., N.A. v. Hodder , 2006 WY 128, ¶ 21, 144 P.3d 401, 409 (Wyo. 2006). "We construe the [trust instrument] as a whole, attempting to avoid a construction which renders a provision meaningless. We strive to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision." Id. , ¶ 21, 144 P.3d at 409 (citation omitted).
[¶36] In Shriners , Shriners was a named beneficiary in a trust consisting primarily of ranch property. Shriners, ¶¶ 1, 6, 373 P.3d at 397-98. After the settlors died, it filed a petition to terminate the trust, alleging the trust was no longer practicable or economical. Id. ¶¶ 17, 20, 373 P.3d at 401-02. Because there were questions of fact in dispute, the district court held a bench trial, after which it denied Shriners' petition to terminate. Id. ¶¶ 20, 23, 373 P.3d at 402-03. The court found the trust to have two material purposes: " '(1) to keep the Ranch open and used for agricultural purposes or preservation until 2100, and (2) to benefit Shriners and Kalif [Children's Travel Fund, the other beneficiary].' " Id. , ¶ 23, 373 P.3d at 402. It decided termination of the trust would defeat the first purpose. Id. ¶ 24, 373 P.3d at 403.
[¶37] Shriners appealed, arguing the district court erred in finding retention of the ranch was a material purpose of the trust. Id. ¶ 39, 373 P.3d at 405. It pointed to the trust agreement which stated: "The purpose of this agreement is to create the trust ... for the [Settlors'] benefit and the other beneficiaries ...." Id. ¶ 41, 373 P.3d at 406. We agreed this provision demonstrated one of the material purposes of the trust was to benefit Shriners and Kalif. Id . However, other provisions of the trust indicated the Settlors' intent was for the trustee to retain the ranch in the trust until 2100, and the ranch's "operation and maintenance trumped payment of income to Shriners and Kalif." Id . ¶¶ 42, 45, 373 P.3d at 406-407. "Given this clear and continuing expression of the settlors' intent," we agreed with the district court "retention of the ranch was at least a material purpose of the [t]rust, if not its paramount purpose."[15] Id . ¶ 45, 373 P.3d at 407.
[¶38] Similarly, in this case, Bruce's intent and the Trust's purpose(s) were material in deciding the appropriateness of the proposed decanting. And Edward disputed whether the proposed decanting was consistent with either. It was error, therefore, for the district court to resolve these matters, as well as the validity of the reasons for the proposed decanting and whether it constituted a breach of EFM's fiduciary duties, on a motion for judgment on the pleadings. See Ecosystem Res., L.C. , ¶ 8, 158 P.3d at 687-88 ("If an issue of fact exists, [a] motion [for judgment on the pleadings] should not be granted.").
[¶39] We recognize "[i]nterpretation of an unambiguous trust instrument is a matter of law for the court." Shriners , ¶ 40, 373 P.3d at 405 (citing Forbes v. Forbes , 2015 WY 13, ¶ 23, 341 P.3d 1041, 1051 (Wyo. 2015) ). The district court purported to interpret the Trust Agreement, but it did so without considering whether the Trust Agreement was ambiguous or Edward's arguments that the proposed decanting was inconsistent with Bruce's intent, the purpose of the Trust, and the Trust Agreement. In any event, our only point is the district court erred in making factual findings concerning the appropriateness of the proposed decanting because those findings went beyond the discrete legal question both parties agree was before it and *715 those factual issues were disputed and material.[16]
[¶40] One final matter remains-whether we should remand this matter to the district court for further proceedings to resolve the disputed issues. We decline to do so. Although the Petition for Instructions was written much broader, EFM claims the only issue it sought to raise in the Petition was the narrow legal question of whether it had the general authority to decant under Wyoming law and the Trust Agreement. Both parties agree it has that authority and the district court's decision should be limited to resolving that limited legal question. We so limit it. As a result, the only issue before the district court has been resolved and no further proceedings in this case are required at this time.[17]
CONCLUSION
[¶41] We affirm the district court's judgment to the limited extent it concluded EFM, as Trustee of the Trust, has the general authority to decant trust property under Wyoming law and the Trust Agreement. We reverse the district court's judgment in all other respects.
BOOMGAARDEN, Justice, specially concurring.
[¶42] Everyone agrees the district court was presented with a single, narrow legal question: Did EFM have general authority to decant under Wyoming law and the Trust Agreement? The district court answered that question in the affirmative, and the parties do not dispute that ruling. The narrow issue before us is whether, in making that ruling on a motion for judgment on the pleadings, the district court "erred in resolving disputed questions of material fact concerning the propriety of EFM's proposed decanting." In resolving that narrow issue, I agree with the majority that "our only point is[:] the district court erred in making factual findings concerning the appropriateness of the proposed decanting because those findings went beyond the discrete legal question ... and those factual issues were disputed and material." I write separately because I believe the majority inappropriately ventures beyond that point to implicitly interpret and advise on the applicability of Wyoming Statute § 4-10-816(a)(xxx) in this case.
[¶43] The issue of whether § 816(a)(xxviii) or (xxx) is more applicable is not before us.[18]
*716 In its Petition, EFM sought judicial confirmation that it had authority to decant under the Wyoming Uniform Trust Code and common law. The Petition itself cited no statutory provisions. However, the Memoranda of Trust Distribution included with the Petition-specifically cited to the trustee's decanting power under Wyoming Statute § 4-10-816(a) (xxviii), and proposed distribution of the Trust property based on the "statutory power" provided under that provision, and that provision only. EFM did not petition for instructions to confirm any authority it may have under § 816(a)(xxx).
[¶44] EFM's Brief in Support of [its] Motion for Judgment Granting Its Petition for Instructions similarly cited only Wyoming Statute § 4-10-816(a) (xxviii) as the source of its statutory decanting power. Additionally, as noted in the majority opinion, EFM explained that it brought the Petition to remove any doubt arising from the Trust being created in 2012, prior to the enactment of Wyoming Statute § 4-10-816(a) (xxviii) in 2013. EFM nowhere referenced or relied on Wyoming Statute § 4-10-816(a)(xxx) as the basis of the statutory decanting power it seeks to exercise, and the majority acknowledges this fact.
[¶45] It is Edward who, in his Response and Objection to the Petition for Instructions, asserted that § 816(a)(xxx) rather than § 816(a)(xxviii) applies "because Petitioner is trying to create separate shares for the beneficiaries." Edward then asserted that "Petitioner's request violates Wyo. Stat. 4-10-816(a)(xxx)"-a power EFM never invoked in its Petition or motion-because the terms of the Trust require that EFM manage the assets in a single trust.
[¶46] Notably, although Edward asserted in his objection to the Petition that "the proposed decanting should not be allowed," he nowhere interpreted § 816(a)(xxx) to authorize decanting. In his Response and Opposition to Petitioner's Motion for Judgment Granting Its Petition for Instructions, he never even mentioned § 816(a)(xxx), instead arguing that the court need not and should not, for purposes of ruling on the motion, make any determination as to whether the proposed decanting is contrary to the Trust's terms.[19] Nor does Edward argue the applicability of, much less mention, § 816(a)(xxx) on appeal. On appeal, Edward focuses his argument on whether, and to what extent, the court improperly resolved material issues of fact without discovery or trial.
[¶47] Notwithstanding the fact that neither party mentions or relies on § 816(a)(xxx) on appeal, and that the district court's consideration *717 of § 816(a)(xxx) involved a question of law (interpretation of the Trust) unrelated to the narrow issue before us, the majority opines that § 816(a)(xxx) is "more applicable here" in that it "speaks to distributing all or a portion of trust property into two separate trusts, which is what EFM proposes here."
[¶48] The majority's summary conclusions that § 816(a)(xxx) is (1) a decanting power, (2) "more apropos" to the circumstances of this case fail to address important questions of statutory interpretation:
• Is § 816(a)(xxx) unambiguous?
• Given that the plain language of § 816(a)(xxviii) speaks to a trustee's power to distribute trust income or principal, but the plain language of § 816(a)(xxx) speaks to a trustee's power to separate a trust, did the legislature intend both provisions to constitute decanting?
• If the power to separate a trust in § 816(a)(xxx) is fairly characterized as a decanting power, why don't the restrictions set forth in § 816(b) apply to § 816(a)(xxx) as well as § 816(a)(xxviii)?
• If § 816(a)(xxx) authorizes a trust to be separated into "separate trusts or shares for each beneficiary," Wyo. Stat. Ann. § 4-10-816(a)(xxx) (emphasis added), could EFM legitimately use this provision to separate the Trust into two trusts for the benefit of three beneficiaries as the majority suggests?
These questions should be addressed, but they are not, and should not, be addressed in this appeal.
[¶49] I believe it is inappropriate in this, our first opinion dealing with decanting under the Uniform Trustee Powers Act, to implicitly interpret or favor the application of Wyoming Statute § 4-10-816(a)(xxx) under the circumstances of this case. Rather, any discussion or interpretation of § 816(a)(xxx), as it relates to the statutory decanting power provided in § 816(a)(xxviii), should be reserved for an appeal where the parties squarely present and thoroughly brief the issue(s).

Decanting of trust property generally refers to the "distribution of assets from one trust into a second trust, like wine is decanted from the bottle to another vessel." In re Estate of Sibley , 246 Ariz. 498, 442 P.3d 805, 810 (Ariz. Ct. App. 2018) (quoting The Uniform Trust Decanting Act, A Summary , http://www.uniformlaws.org/shared/docs/trustdecanting/UTDA%20-%20Summary.pdf).

Because the Settlor and two of the beneficiaries have the same last name, we will refer to them by their first names.

Although the Trust property is located in Nebraska, the district court had jurisdiction over these proceedings because the principal place of administration of the Trust is in Cheyenne, Wyoming. Wyo. Stat. Ann. §§ 4-10-202(a) (LexisNexis 2019) ("By becoming a fiduciary of a trust having its principal place of administration in this state or by moving the principal place of administration to this state, all trust fiduciaries submit personally to the jurisdiction of the courts of this state regarding any matter involving the trust."); Wyo. Stat. Ann. § 4-10-203(a) (LexisNexis 2009) ("The district court ... ha[s] exclusive jurisdiction of proceedings in this state brought by a trustee ... concerning the administration of a trust.").

Bruce was also survived by Julie's children. At the hearing below, EFM's counsel stated Julie had two children. Darla and Julie's pleadings in the district court were joined by two of her children. However, other parts of the record reveal Julie to have four children, two of them minors. It appears Julie has four children but only the two non-minor children joined in the pleadings. For simplicity purposes, we will refer simply to Darla and Julie.

The Trust Agreement provides: "The Ranch shall be held for family purposes only, and no commercial hunting shall be allowed."

EFM alleged in the Petition the Decanter Trusts would be "structured in a substantially similar manner as the original Trust, and in a manner that may preserve the current generation-skipping transfer tax exempt and asset protection features of the original Trust."

EFM's appraisal of the Watts property valued it at $1,700,000 as of July 24, 2017. Edward obtained his own appraisal of the Ranch, which revealed the Watts property to have a value of $1,300,000 as of January 5, 2018. Edward's appraisal valued the remainder of the Ranch at $8,010,000.

EFM also claimed in its motion for judgment that because Edward had not denied any of the factual allegations contained in the Petition in his response thereto, they were deemed admitted. W.R.C.P. 8(b)(6), however, deems the failure to deny an allegation as an admission only if "a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided." A responsive pleading was not required in this case. W.R.C.P. 7(a) provides an exhaustive list of the types of pleadings allowed in civil proceedings and a "petition" is not among them. As a result, a petition for instructions is not a "pleading," and no responsive pleading was required. EFM does not pursue the issue in this appeal.

Edward argues a petition for instructions is only appropriate to resolve discrete legal questions where there is some doubt about application of the law or interpretation of a trust agreement. See Rock Springs Land and Timber, Inc. v. Lore , 2003 WY 100, ¶ 22, 75 P.3d 614, 623 (Wyo. 2003) ("[T]he purpose of a court's guidance to trustees is to protect the trustees 'in those situations where the advice of competent lawyers is not sufficient protection because of doubtful meaning of the trust instrument or uncertainty as to the proper application of the law to the facts.' " (quotations omitted)); Restatement (Third) of Trust, § 71 (2007) ("A trustee ... may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions."). Because EFM never alleged the law or Trust Agreement were ambiguous as to its general authority to decant, Edward suggests there was no basis for the Petition and the district court was without jurisdiction. EFM agrees Wyoming law and the Trust Agreement permit decanting of trust property without prior court approval but explains it brought the petition to remove any doubt arising from the Trust being created prior to the enactment of Wyo. Stat. Ann. § 4-10-816(a) (xxviii), which it claims authorized decanting.
In hindsight, it may seem EFM's filing of the Petition for Instructions was unnecessary given the parties' admissions EFM has the general authority to decant trust property under Wyoming law and the Trust Agreement. In any event, contrary to Edward's argument, the matter is not jurisdictional. As we have already explained, the district court had jurisdiction over these proceedings. See supra n.3.

EFM relies solely on § 4-10-816(a) (xxviii) but § 4-10-816(a)(xxx) is more apropos here. The former speaks to decanting all or a portion of trust property into a single trust whereas the latter speaks to distributing all or a portion of trust property into two separate trusts, which is what EFM proposes here. In any event, § 4-10-816(a) (xxviii) is pertinent to the proposition that Wyoming law generally allows for the decanting of trust property.

EFM admitted at oral argument the Petition could be read to include a request for approval of the proposed decanting.

In the same sentence, the district court also stated, "and the Trustee maintains that there are no alternative measures to adequately fund the Trust while honoring its directives." This statement, unlike the court's "underfunded" statement, is prefaced with "the Trustee maintains." As a result, it is not a finding of fact but rather simply restates EFM's allegations.

The district court referred to "decanting" in general. However, when its decision is read as a whole, it is clear the findings relate to the proposed decanting. Notably, the court decided: "[T]he Trustee is in the best position to determine-and subsequently has determined-a valid means of preserving Settlor's intentions, as the Settlor foresaw it would." (Emphasis in original.) Moreover, in granting the Petition for Instructions and not otherwise limiting that grant, the court decided both (1) decanting is generally permitted under Wyoming law and the Trust Agreement and (2) the proposed decanting was appropriate, as the Petition requested instructions on both issues.

In the same sentence, the district court also found "[t]here is no indication that the Trustee seeks instructions in bad faith." Edward claims this too was an improper finding. However, the district court found only that the Trustee did not seek instructions in bad faith, not that the proposed decanting was not in bad faith.

Although Shriners involved a petition to terminate by a beneficiary, EFM's proposal to decant the Trust property into two separate trusts in this case essentially leads to the same result, termination of the original Trust. In any event, Shriners demonstrates the settlor's intent is paramount in interpreting a trust instrument.

At oral argument, EFM's counsel attempted to wave off the additional factual findings as mere context. But the additional findings went beyond mere background information and certainly could be used to support a future collateral estoppel claim against Edward. See Eklund v. PRI Envtl., Inc. , 2001 WY 55, ¶ 15, 25 P.3d 511, 517 (Wyo. 2001) (in general, "[c]ollateral estoppel bars relitigation of previously litigated issues and involves an analysis of four ... factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding"). EFM's counsel's assurance at oral argument that EFM was not claiming and will not claim the district court's order to have preclusive effect is cold comfort.

Nothing in this opinion should be read to preclude Edward from seeking an injunction in the event EFM decides to proceed with the proposed decanting or from seeking relief after the fact. We simply decide this case has ended and a remand is not required. We also emphasize nothing in this opinion should be read as reaching the merits of the parties' arguments concerning the propriety of the proposed decanting.

Wyo. Stat. Ann. § 4-10-816 is known as the Uniform Trustee Powers Act. Among the 32 enumerated powers, § 816(a)(xxviii) authorizes a trustee to:
Distribute all or any portion of trust income or principal in further trust for the benefit of the trust beneficiaries pursuant to authority granted in the trust instrument to make discretionary or mandatory distributions of trust income or principal to the trust beneficiaries, whether or not the discretionary or mandatory distributions are pursuant to an ascertainable standard[.]
Section 816(a)(xxx) authorizes a trustee to:
Separate a trust for the benefit of more than one (1) beneficiary into separate trusts or shares for each beneficiary, unless the trust instrument requires the trust property to be held in one (1) trust for the beneficiaries[.]
Section 816(b) limits a trustee's power under § 816(a)(xxviii), but only § 816(a)(xxviii), as follows:
The power provided in paragraph (a)(xxviii) of this section shall not be exercised in any manner that would prevent qualification for a federal estate or gift tax marital deduction, federal estate or gift tax charitable deduction, or other federal income, estate, gift or generation-skipping transfer tax benefit claimed for the trust from which the distribution in further trust is made. If the trustee making a distribution in further trust under paragraph (a)(xxviii) of this section is a beneficiary of the trust from which the distribution in further trust is made, the distribution in further trust may not change the trustee's interest as a beneficiary in the trust. A trustee shall not be liable for exercising the power permitted under paragraph (a)(xxviii) of this section if the power is exercised in good faith.
The Uniform Trustee Powers Act contains no additional limitation provisions.

Presumably in response to Edward's assertion in his Response and Objection to the Petition that § 816(a)(xxx) should apply instead of (xxviii), the district court, in its Decision Letter, states that "[d]ecanting of trust property is specifically provided for under [Wyoming Statute] § 4-10-816(a) (xxviii)" and that Wyoming Statute § 4-10-816(a)(xxx) "further provide[s]":
[A Trustee may] [s]eparate a trust for the benefit of more than one (1) beneficiary into separate trusts or shares for each beneficiary, unless the trust instrument requires the trust property be held in one (1) trust for all the beneficiaries.
(Emphasis added.)
In so responding, I do not believe the district court decided, as the majority states, that § 816(a)(xxx) constitutes decanting authority under the Uniform Trustee Powers Act. And the district court nowhere opined that § 816(a)(xxx) is the statutory authority most applicable to the proposed asset distribution in this case.
The district court did interpret the Trust to conclude "[t]here is no indication that the Settlor required the trust property be held in one (1) trust," and therefore no violation of the condition in § 816(a)(xxx). However, this interpretation is not a determination that § 816(a)(xxx) constitutes decanting. And as the majority recognized, the district court's analysis on this question of law was flawed and beyond "our only point"-that "the district court erred in making factual findings concerning the appropriateness of the proposed decanting[.]"