# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 116

APRIL TERM, A.D. 2020

September 4, 2020

DAVID W. JACKSON, as Successor
Trustee of the Phillip G. Jackson
Family Revocable Trust,

Appellant
(Plaintiff),

v.                                                                          S-20-0008

CANDYCE L. MONTOYA and
RICHARD L. MONTOYA,

Appellees
(Defendants).

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
> Amy M. Iberlin and Alia Thal Scott of Williams, Porter, Day, and Neville, P.C., Casper, Wyoming.

*Representing Appellees:*
> No appearance.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice.**

[¶1]    David W. Jackson, Successor Trustee of The Phillip G. Jackson Family Revocable Trust, as amended ("the Trust"), filed a complaint for declaratory judgment requesting a ruling that he could sell real property held by the Trust for the care, maintenance and support of the surviving settlor.  The district court interpreted the Trust to grant beneficiary Candyce L. Montoya a life interest in the real property, and it therefore concluded that the Successor Trustee lacked authority to sell the property.  We reverse and remand for further proceedings.

## ISSUES

[¶2]    Appellant presents one issue on appeal, which we restate as:

> Did the district court err as a matter of law when it concluded that Ms. Montoya has a life interest in the real property held in the Trust, and that the Successor Trustee therefore lacked authority to sell the property under the terms of the Trust?

## FACTS

[¶3]    On March 17, 1994, Phillip G. Jackson and Rose D. Jackson, husband and wife ("settlors"), executed the Phillip G. Jackson Family Revocable Trust.  Mr. and Mrs. Jackson, as settlors, reserved "the right and power to alter, amend, revoke or modify [the Trust] in whole or in part without the consent of any other person."  Mr. and Mrs. Jackson also appointed themselves as the initial trustees.

[¶4]    In the event of death, incompetency, inability to serve or resignation of either of the initial trustees, the other named trustee was granted the authority to act alone.  In the event of death, incompetency, inability to serve or resignation of both of the original trustees, the settlors appointed their sons Dennis R. Jackson, David W. Jackson and Steve P. Jackson to serve as co-trustees of the Trust.

[¶5]    During the initial funding of the Trust in 1994, the settlors transferred real property situated in Natrona County, Wyoming, commonly known as 141 North Lincoln Street, Casper, Wyoming ("Property") to the Trust.[1]   The settlors conveyed the Property by

---

[1] The original Phillip G. Jackson Family Revocable Trust describes the real property as located at 139 and 141 North Lincoln Street, Casper, Natrona County, Wyoming.  However, the 2010 amendment to the Trust only refers to 141 North Lincoln Street, Casper, Natrona County, Wyoming.  There appears to be a discrepancy in the mailing address, but based on either address, the settlors intended the Property to be 141 North Lincoln, described as:

1

quitclaim deed to themselves as trustees and to their successors in trust. The Property was to "be held and managed free of court supervision for the uses and purposes and upon the terms and conditions set forth in" the Trust. Section 6 of the Trust provides for distribution of the net income and principal of the Property under three different scenarios: (1) distribution to the original two settlors during their lifetime (Subsection 6.1); (2) distribution upon the death of one settlor to the surviving settlor (Subsection 6.2); and (3) distribution upon the death of both settlors (Subsection 6.3).

[¶6]    On March 18, 2010, the settlors amended the Trust by executing the First Amendment to the Phillip G. Jackson Family Revocable Trust.[2] The amendment changed the distribution of the Property to be made upon the death of both settlors. Originally, upon the death of both, the Property was to be sold by the trustees subject to a right of first refusal held by their daughter, Candyce L. Montoya. The 2010 amendment eliminated Ms. Montoya's right of first refusal, and instead created a separate trust which would come into being upon both settlors' deaths. Upon creation of the separate trust, the Property is to be held for Ms. Montoya's benefit for her natural life. As amended, Subsection 6.3.c. read:

> 6.3 *Distribution on Death of Surviving Settlor.* Upon the death of the surviving Settlor, the successor trustees shall dispose of and distribute the trust property (including but not limited to assets received by the trustees under such Settlor's Will or otherwise), and any undistributed income, as follows:
>
> * * * *
>
> c. Cash in an amount deemed by the trustees as necessary to pay trustee's fees and expenses as provided herein, together with all right, title and interest owned by the trust in the real property and improvements located at 141 North Lincoln, City of Casper, County of Natrona, Wyoming, shall continue to be held, administered and distributed by the successor trustees for the benefit of Candyce L. Montoya, for the term of her natural life. This trust shall be known as "**The Candyce L. Montoya Testamentary Trust**". Except for the fees and expenses of

The South 20 feet of Lot numbered 1 and the North 20 feet of Lot numbered 2 in Block numbered 99 in the City of Casper, Natrona County, Wyoming, together with all appurtenances thereto and all improvements thereupon situate.

Subject to all building and zoning regulations, exceptions, reservations, restrictions, easements, rights-of-way, and covenants of record.

[2] The Court refers to the original Trust agreement and First Amendment as "the Trust" throughout the opinion.

trustee William B. Ebzery, should he be serving as trustee of said trust, all other costs and expenses of maintaining the trust property, including but not limited to taxes, insurance, improvements and repairs, shall be paid individually by the beneficiary, Candyce L. Montoya, and not out of the trust property. Provided, however, the beneficiary, Candyce L. Montoya, shall be entitled to reside in the house, rent free. Should such real property and improvements be sold or leased to a third party by the trustees, the net sales or rental proceeds therefrom shall be held, administered and distributed under the terms of Subsection 6.3.e of this revocable trust, as amended.

Upon the death of Candyce L. Montoya, the successor trustees shall distribute all right, title and interest in the trust property to the then-living children or [sic] Candyce L. Montoya, in equal shares, free of trust. The Candyce L. Montoya Testamentary Trust shall then terminate.

[¶7]　On March 12, 2018, Rose D. Jackson's primary care physician, Akash Taggarse, M.D. of Oro Valley, Arizona, certified that to a reasonable degree of medical certainty Rose D. Jackson was not capable of managing her financial or trust affairs. Over one month later, on April 27, 2018, Phillip G. Jackson's primary care physician, also Dr. Taggarse, certified that Phillip G. Jackson was likewise not capable of managing his financial or trust affairs. As a result of the settlors' incapacitation, David W. Jackson ("Successor Trustee") began serving as successor trustee of the Trust on May 16, 2018.[3]

[¶8]　In May 2018, both settlors resided at Carlton Village in Tucson, Arizona, an assisted living facility. In August 2018, Mrs. Jackson died, leaving Mr. Jackson as the only surviving settlor. The assisted living facility costs for the care of Mr. Jackson are approximately $3,500.00 per month. To pay for that care, the Successor Trustee sought to sell the Property in accordance with Section 6.2.b. of the Trust, which provides:

The trustee shall subject to the other provisions of . . . Section 6.2, pay to the surviving Settlor, at convenient intervals, not less frequently than quarterly, all of the net income of the trust property. The trustee shall also pay or distribute to the surviving Settlor such amounts from the principal of the trust as the surviving Settlor may, from time to time, request or as the trustee determines in his or her discretion to be necessary

---

[3] Dennis R. Jackson and Steven P. Jackson declined to serve as a successor trustee of the Trust and requested that David W. Jackson serve in the capacity of successor trustee.

for the surviving Settlor's care, comfort, support, welfare or maintenance.

[¶9]   The Successor Trustee intended to use the sale proceeds to pay the monthly expenses for Mr. Jackson's care, comfort, support, welfare and maintenance.  He further intended to hold any remaining proceeds in Trust and to distribute them to Ms. Montoya upon Mr. Jackson's death in accordance with Subsection 6.3.c. of the Trust.

[¶10]  On July 23, 2018, Successor Trustee David Jackson provided notice of the intended sale to Ms. Montoya, who had resided rent-free at the Property with her husband since 1975.  Ms. Montoya refused to vacate the Property, and accordingly, on August 20, 2018, Mr. Jackson served the Montoyas with a *Notice to Quit Premises*.  On August 27, 2018, the Successor Trustee filed a *Complaint for Forcible Entry and Detainer* in circuit court.  Less than thirty days later, on September 10, 2018, the circuit court transferred the case to district court, finding that title was in dispute, and that therefore the matter should be heard in district court.  On October 10, 2018, the district court dismissed the forcible entry and detainer action for lack of subject matter jurisdiction.

[¶11]  On June 25, 2019, the Successor Trustee filed a *Complaint for Quiet Title, Ejectment and Declaratory Judgment* against the Montoyas in district court.  He also requested that the district court enter a declaratory judgment finding that the Trust is entitled to sole possession of the Property, and that he is entitled to sell the Property by the terms of the Trust.  Finally, he requested that the district court find that the Montoyas were precluded from claiming any right, title or interest, including any possessory rights in and to the Property, and that it eject them to allow it to be sold.

[¶12]  The Montoyas were served with the complaint and summons on June 27, 2019.  They both failed to plead or otherwise respond to the complaint.  Accordingly, on July 19, 2019, the Successor Trustee filed an *Application to the Clerk for Entry of Default*.  On October 28, 2019, the district court clerk entered default against the Montoyas.  The Successor Trustee thereafter requested a hearing and entry of a default judgment.  The Montoyas did not object to the default hearing, nor did they request to set aside the entry of default.

[¶13]  On October 18, 2019, the district court held a hearing on the motion and application for default judgment.  Successor Trustee David Jackson and Ms. Montoya, appearing pro se, were present at the hearing.  Ms. Montoya was allowed to cross-examine Mr. Jackson and to testify, but she provided no argument, testimony, or other evidence pertaining to the requested default judgment.

[¶14]  On October 29, 2019, the district court entered an order resulting from the October 18, 2019 hearing.  The court denied the request for default judgment and found that the settlors intended that "Candyce L. Montoya [was] to be able to live in the [Property] rent

4

free for the term of her natural life," based on the language of the amendment to the Trust. The district court found no authority for the Trustee to eject Ms. Montoya from the Property and to sell it for the benefit of the remaining settlor during Ms. Montoya's life. On that basis, it also denied the Trustee's request to quiet title and to eject Ms. Montoya from the Property. With respect to the declaratory judgment, the district court found and ordered as follows:

> **IT IS ORDERED** that the [Successor Trustee's] request for Declaratory Judgment is **GRANTED.** The Court finds that, pursuant to the unambiguous intent of the Settlors, the Trustee does not have the authority to remove Mrs. Montoya from [the Property] and sell the [P]roperty under the facts presented. Mrs. Candyce L. Montoya has a life interest in the [P]roperty.

[¶15] The Successor Trustee timely appealed the district court's order to this Court and completed the required briefing. Appellees did not file a brief or any other responsive pleading.

## DISCUSSION

[¶16] This appeal requires interpretation of a trust agreement, a question of law which we review de novo. *Gowdy v. Cook*, 2020 WY 3, ¶ 39, 455 P.3d 1201, 1210-11 (Wyo. 2020); *Forbes v. Forbes*, 2015 WY 13, ¶ 23, 341 P.3d 1041, 1051 (Wyo. 2015). The meaning of a trust is determined by the same rules that govern the interpretation of contracts. *Shriners Hosps. for Children v. First N. Bank of Wyoming*, 2016 WY 51, ¶ 40, 373 P.3d 392, 405-06 (Wyo. 2016). We look to "the plain language contained in the four corners of the document," *EGW v. First Fed. Sav. Bank of Sheridan*, 2018 WY 25, ¶ 30, 413 P.3d 106, 115 (Wyo. 2018), and our primary purpose is to determine the intent of the settlor. *Forbes*, ¶ 72, 341 P.3d at 1061; *Gowdy*, ¶ 39, 455 P.3d at 1210-11.

[¶17] "We construe the trust instrument as a whole, attempting to avoid a construction which renders a provision meaningless." *Matter of Bruce F. Evertson Dynasty Tr.*, 2019 WY 84, ¶ 35, 446 P.3d 705, 714 (Wyo. 2019). Similarly, "[w]e strive to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision." *Gowdy*, ¶ 39, 455 P.3d at 1210-11.

[¶18] Generally, contractual provisions are construed "in a manner that is consistent with the labels the parties have given them." *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 833 F.3d 470, 476 (5th Cir. 2016) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015). Absent contrary language in a trust, section headings are to be given effect in interpreting and construing the trust. 11 *Williston on Contracts* § 32:5 (4th ed., May 2020 update) ("To the extent possible, and except to the extent that the parties manifest a contrary intent, by stating, for example, that

5

recitals or headings are not to be considered or given effect in determining the meaning of their agreement, every word, phrase or term of a contract must be given effect."). A "title, like every other portion of a contract, may be looked to in determining its meaning, because headings and titles provide context and can inform the meaning of the sections they label." *RSUI Indem. Co.*, 466 S.W.3d at 121 (citation omitted); *see also* 17A Am. Jur. 2d *Contracts* § 372 (Aug. 2020 update).

[¶19] The district court interpreted the Trust to grant Ms. Montoya a life estate in the Property, which precluded the Successor Trustee from selling the Property. We reject this interpretation, because it fails to give effect to the Trust's distribution terms and is not consistent with the settlors' clear intent.

[¶20] The trust agreement created the Trust, identified the trust property, designated the trustee, enumerated the trustee's powers, and set forth a distribution scheme. Section 6 of the Trust is labeled "Dispositive Provisions," and it addresses the disposition of the Trust assets under three separate distribution schemes, as already noted. Subsection 6.1 is titled in bold print "Distributions to Settlors," and it contains provisions directing the trustee to dispose of certain amounts of net income and principal from the Trust property during both of the settlors' lives. Subsection 6.2 is titled in bold print "Distribution to Surviving Settlor Upon Death of Other Settlor," and it directs the trustee to administer and distribute the Trust property upon the death of one settlor for the benefit of the remaining settlor. Subsection 6.3 is titled in bold print "Distribution on Death of Surviving Settlor," and it directs the Successor Trustee to dispose of and distribute the remaining Trust property and any undistributed income upon the death of both settlors.

[¶21] Subsection 6.2, which governs distributions when there is a surviving settlor, mandates that

> [u]pon the death of either Settlor . . . the trustee shall, subject to the other provisions of . . . Section 6.2, pay to the surviving Settlor, at convenient intervals, not less frequently than quarterly, all of the net income of the trust property. The trustee shall also pay or distribute to the surviving Settlor such amounts from the principal of the trust as the surviving Settlor may, from time to time, request or as the trustee determines in his or her discretion to be necessary for the surviving Settlor's care, comfort, support, welfare or maintenance.

[¶22] Consistent with the trustee's authority to distribute the Trust principal as necessary is Subsection 5.1 of the Trust, which grants the Successor Trustee "all the fiduciary powers provided in the Wyoming Uniform Trust Code, Wyo. Stat. §§ 4-10-801, *et seq.* (2009), as

amended."[4]  This includes the authority to "sell [Trust] property, for cash or on credit, at public or private sale."  Wyo. Stat. Ann. § 4-10-816(a)(ii).  Furthermore, Subsection 5.3 of the Trust provides (emphasis added):

> 5.3 ***Power to Sell and to Distribute in Kind.***  The trustees may in the trustees' sole discretion, ***where necessary*** or convenient in order ***to facilitate any distribution*** or division ***of assets under the trust***, ***sell all or any part of the trust property*** or make any such distribution or division in kind or partly in cash or partly in kind.

[¶23]  Read together, Subsections 5.1, 5.3, and 6.2 make it clear that the settlors intended the Successor Trustee to sell or deal with any Trust property, in his or her sole discretion, without interference, for the benefit of the surviving settlor's care, comfort, support, welfare or maintenance, as may be necessary.  If we were to accept the district court's interpretation of the Trust, that Subsection 6.3 controls over these other provisions, the Trust's clear intent to benefit the settlors during their lives would go unfulfilled.  The more reasonable interpretation, and the one that gives meaning to all of the Trust's provisions, is to recognize that the interests distributed under Subsection 6.3 are remainder interests that vest only upon the death of the surviving settlor.

[¶24]  We have explained that "[a] property interest vests at the point when no contingency can defeat the interest."  *Shriners Hosps.* ¶ 32, 373 P.3d at 404.  This Court distinguishes vested and contingent interests as follows:

> The broad distinction between vested and contingent remainders is this: In the first, there is some person in esse known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat. In the second, it depends upon the happening of a contingent event, whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the

---

[4] "A trust agreement is governed by the plain language contained in the four corners of the document."  *Gowdy*, ¶ 43, 455 P.3d at 1211.  "In interpreting a trust, our primary purpose is to determine the intent of the settlor."  *Matter of Bruce F. Evertson Dynasty Tr.*, ¶ 35, 446 P.3d at 714.  The settlor's "intent controls and that intent is found in the terms of the trust."  *Gowdy*, ¶ 44, 455 P.3d at 1211.  A settlor is free to incorporate whatever lawful terms he wants into the trust and those terms will control.  *Id.*

In 2010, the settlors amended the trustee's powers by specifically authorizing the trustee to exercise "all the fiduciary powers provided in the Wyoming Uniform Trust Code, Wyo. Stat. §§ 4-10-801, et seq. (2009), as amended."  Accordingly, through the settlors' express adoption of the fiduciary powers enumerated in the Wyoming Uniform Trust Code, the settlors' granted the Successor Trustee the authority to "sell [Trust] property, for cash or on credit, at public or private sale."  Wyo. Stat. Ann.§ 4-10-816(a)(ii).

particular estate upon which it depended shall have been determined, so that the estate in remainder will never take effect.

*Id.*

[¶25]   When the Trust provisions are read as a whole, it is clear that Ms. Montoya's interest under Subsection 6.3 will not vest, if at all, until the death of the remaining settlor.  Since her interest had not yet vested when the Successor Trustee sought to sell the Property, her interest could not provide a basis to preclude the sale.  This conclusion is further supported by this additional language in Subsection 6.3.c., which expressly contemplates that the Property might be sold before Ms. Montoya's property interest vested:

> Should such real property and improvements be sold . . . to a third party by the trustees, the net sales or rental proceeds therefrom shall be held, administered and distributed under the terms of Subsection 6.3.e. of this revocable trust, as amended.

[¶26]   Reading the Trust as a whole and giving effect to all of its provisions and the settlors' intent, we must conclude that the district court erred in interpreting the Trust to preclude the Successor Trustee's sale of the Property for the care, comfort, support, welfare and maintenance of the surviving settlor.

## CONCLUSION

[¶27]   Ms. Montoya's interest in the Property will not vest until the death of the remaining settlor.  Accordingly, pursuant to the terms of the Trust, the Successor Trustee may sell the Property for the benefit of the remaining settlor in accordance with Subsection 6.2.b. of the Trust.  For these reasons, we find that the district court erred as a matter of law when it declared that the Successor Trustee did not have the authority to sell the Property during the surviving settlor's lifetime.  We reverse and remand for proceedings consistent with this opinion.

8