# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 43

APRIL TERM, A.D. 2023
May 9, 2023

CHRISTINE E. AIMONE, individually and as successor Trustee of the Martin Aimone Revocable Trust Agreement dated the 18th day of March, 1993, as amended, and as Executor of the Estate of Martin Aimone; and FRANCES COLLEEN AIMONE, individually and as successor Trustee of the Gay C. Aimone Revocable Trust Agreement dated the 18th day of March, 1993, as amended,

Appellants
(Defendants),

v.

BENJAMIN W. AIMONE; MATTHEW M. AIMONE; WILLIAM B. AIMONE; JONATHON I. AIMONE, individually and as Executor of the Estate of Bruce William Aimone; MICHAEL J. AIMONE; AMANDA M. AIMONE; THOMAS A. AIMONE; JACOB D. AIMONE; and BEHLEE A. AIMONE,

Appellees
(Plaintiffs).

BENJAMIN W. AIMONE; MATTHEW M. AIMONE; WILLIAM B. AIMONE; and JONATHON I. AIMONE, individually and as Executor of the Estate of Bruce William Aimone,

Appellants
(Plaintiffs),

S-22-0213, S-22-0220

v.

CHRISTINE E. AIMONE, individually and as successor Trustee of the Martin Aimone Revocable Trust Agreement dated the 18th day of March, 1993, as amended, and as Executor of the Estate of Martin Aimone; and FRANCES COLLEEN AIMONE, individually and as successor Trustee of the Gay C. Aimone Revocable Trust Agreement dated the 18th day of March, 1993, as amended,

Appellees
(Defendants).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

**Representing Christine E. Aimone and Frances Colleen Aimone:**
 *C. M. Aron, Aron Law, Lawrence, Kansas.*

**Representing Benjamin W. Aimone, Matthew M. Aimone, William B. Aimone, and Jonathon Isaac Aimone:**
 *Tyler J. Garrett and Kari Hartman, Hathaway & Kunz LLP, Cheyenne, Wyoming. Argument by Tyler J. Garrett.*

**Representing Michael J. Aimone, Amanda M. Aimone, Thomas A. Aimone, Jacob D. Aimone, and Behlee A. Aimone:**
 *Judith Studer and Carissa D. Mobley, Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming. Argument by Carissa D. Mobley.*

**Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    These consolidated appeals stem from a dispute between the children and grandchildren of Martin and Gay Aimone (the Aimones) regarding their inheritances and ownership interests in the family ranch. In Appeal No. S-22-0213, the Aimones' surviving children, Frances Colleen Aimone (Colleen) and Christine E. Aimone (Chris), challenge the district court's reformation of Gay's Trust to reflect her intention that all her surviving children and grandchildren be beneficiaries under the trust. In Appeal No. S-22-0220, four of the Aimones' grandchildren, Ben, Matt, Bo, and Jon Aimone (the Aimone brothers), challenge the district court's rejection of their claims that Chris and Colleen violated their fiduciary obligations; Chris as manager of one of the Aimone entities, and Colleen as trustee of Gay's Trust. They also challenge the court's finding that Chris and Colleen did not violate the no-contest clause of Gay's Trust.

[¶2]    We affirm the district court's ruling in Appeal No. S-22-0213 concerning the intention of Gay's Trust, though on different grounds. We conclude the court erred in finding that Chris and Colleen did not breach their respective fiduciary duties and thus reverse its ruling in Appeal No. S-22-0220.

## *ISSUES*

[¶3]    Chris and Colleen Aimone bring two issues on appeal which we reframe into one:

1. Under the plain language of Gay's Trust, were her grandchildren beneficiaries if their father predeceased Martin but not Gay?

[¶4]    The Aimone brothers appeal three issues:

1. Did the district court err in determining Chris Aimone did not breach her fiduciary duties as manager of Martin Aimone Ranch, LLC, and thereby abuse its discretion in declining to remove her as manager?

2. Did the district court err in determining Colleen Aimone did not breach her fiduciary duties as trustee of Gay's Trust?

3. Did the district court err in refusing to consider the Aimone brothers' argument that Chris and Colleen violated the no-contest provision in Gay's Trust?

1

The Family

[¶5]    Martin and Gay Aimone had four children and ten grandchildren. Colleen had no children; Joe had two children, Amanda and Michael; Bruce had seven children, Ben, Matt, Bo, Jon, Thomas, Jake, and Behlee; and Chris had one child, Stormy. Martin and Gay's children were raised on the ranch and helped work it both as children and adults. Their grandchildren were also raised on or near the ranch and helped work the ranch. As an adult, Bruce worked the family ranch mostly full-time while the other children worked occasionally and balanced other jobs.

[¶6]    Martin and Gay developed an estate plan with their attorney, Timothy Beppler. Martin and Gay drafted identical trusts, The Gay C. Aimone Revocable Trust Agreement (Gay's Trust) and The Martin Aimone Revocable Trust Agreement (Martin's Trust), with a general plan to pass down their properties to their children. Gay amended her trust once in March 1997 and Martin amended his trust several times before his death. These trusts and amendments will be discussed in greater detail as necessary.

[¶7]    Gay passed away in December 1999 and was survived by her husband and all her children and grandchildren. Joe and Bruce passed away in 2005 and 2013, respectively. They predeceased their father, Martin; their two siblings, Colleen and Chris; and their children. Martin died in 2014. When Martin died, the assets of his and Gay's trusts were to be distributed according to their terms. Among those assets were three separate ranch properties.

The Properties and Ownership Structure

[¶8]    The "Home Ranch" consists of 2,611 acres west of Fort Bridger and a roughly 12,000-acre federal lease south of Fort Bridger. "Black's Fork" is a 40,000-acre parcel east of the Home Ranch that includes federal and state leases. The "Rasmussen" parcel is 160 acres and is divided into the North 80 and South 80, with the South 80 providing access to the summer range. The Aimones placed ownership of these ranching properties in various entities and in Martin's and Gay's trusts.

Martin Aimone & Sons

[¶9]    Martin Aimone & Sons is a Wyoming general partnership that was owned in equal shares by Martin, Bruce, and Joe. Martin Aimone & Sons owned and operated the Black's Fork parcel and its leases. In 1993, Martin transferred his partnership interest to his trust. When Joe died in 2005, his share transferred to his wife, who then assigned the interest to Martin's Trust and Bruce so that Martin's Trust owned 50% and Bruce owned 50% of the partnership. After Bruce died in 2013, his 50% interest passed to four of his children, Ben,

Matt, Bo, and Jon. Upon Martin's death in 2014, his trust passed its 50% interest to Chris and Colleen. The partnership is now owned in shares, 25% by Chris, 25% by Colleen, and 12.5% by each of the Aimone brothers.

Martin Aimone & Company

[¶10]  Martin and Gay created Martin Aimone & Co. in 1993, a nominee partnership, that was held equally by Martin's and Gay's trusts. Martin Aimone & Co. owned Home Ranch, North and South Rasmussen, livestock, equipment, and the ranch's brand. In 2011 and 2012, Martin Aimone & Co. conveyed Home Ranch, South Rasmussen, Fort Bridger residence and acreage, and the brand to a new entity, Martin Aimone Ranch, LLC, and conveyed North Rasmussen to Martin's Trust. Martin Aimone & Co. was no longer utilized after the distribution and any remaining assets passed to Martin's Trust and Gay's Trust.

Martin Aimone Ranch, LLC

[¶11]  Martin organized Martin Aimone Ranch, LLC in 2010, which was held 50% by Martin's Trust and 50% by Gay's Trust. Martin and Bruce were co-managers of the LLC. As stated above, the LLC owned the Home Ranch, South Rasmussen, and a home, plus one acre in Fort Bridger. The home and one acre were conveyed to Martin's and Gay's trusts in April 2012. Two months later, the LLC conveyed South Rasmussen to Martin's and Gay's trusts. Martin, as trustee, then conveyed the 50% interest in the LLC held by his trust to Bruce through a Deed of Gift, thereby making Bruce a member-manager of the LLC with a 50% interest in the LLC. Bruce passed away in April 2013, which triggered an LLC dissolution event, and his 50% interest passed through his estate to Ben, Matt, Bo, and Jon as assignees. Martin appointed Chris co-manager shortly thereafter.[1]

[¶12]  When Martin passed away in December 2014, he was the successor trustee of Gay's Trust, which owned the other 50% of the LLC, and was the sole member with voting rights. His passing triggered another LLC dissolution event and a distribution event under Gay's Trust. Chris became the sole manager of the LLC, and Colleen, as trustee of Gay's Trust, was tasked with distributing Gay's Trust property. Disputes arose as Martin's and Gay's trusts were being distributed. This conflict is predominantly between Colleen and Chris, and the Aimone brothers, however all of Bruce and Joe's children have an interest in the outcome of Gay's Trust interpretation and are parties to Appeal No. S-22-0213.

---

[1] Chris did not become a member of the LLC until after Martin and Gay's passing, but under the LLC Operating Agreement, Chris need not be a member to be appointed manager.

The Disputes

[¶13]  About sixteen months after Martin's death, the Aimone brothers brought several claims against Colleen and Chris. They petitioned the court in a probate action to require Colleen to distribute Gay's Trust and provide an accounting; and brought a civil action against Colleen and Chris that included several claims regarding ranch ownership and a derivative action to remove Chris as manager of Martin Aimone Ranch LLC. Important to this appeal, the Aimone brothers alleged that Colleen failed to properly account for and distribute Gay's Trust assets, and breached her fiduciary duty to the trust; and Chris breached her fiduciary duty to the LLC. Both Colleen and Chris initially denied these allegations, and Colleen later amended her answer and filed a counterclaim, asserting for the first time that Joe and Bruce's children were not beneficiaries of the trust.

[¶14]  The dispute over the trust language stemmed from Gay's 1997 amendment. The trust originally stated, "All other trust property shall be distributed to the Grantor's children, in equal shares, per stirpes." The amended language states:

> All other trust property shall be distributed to those of Grantor's Children who shall survive Grantor and Grantor's Husband, in equal shares; provided that if any of Grantor's Children (other than Christine Ellen Aimone) shall predecease Grantor and Grantor's Husband, then their share shall be distributed, on a per stirpes basis, to the issue of such predeceased Children; and provided further that if Christine Ellen Aimone shall predecease Grantor and Grantor's Husband, then the sum of Twenty-five Thousand Dollars ($25,000.00) shall be distributed to her child, Stormy Leigh Lupher, and the remainder of her share shall be distributed to Grantor's other Children, per stirpes.

[¶15]  Colleen and Chris were advised by their personal counsel that the trust's language required the Aimones' children to predecease both parents for the grandchildren to qualify as beneficiaries of the trust. The Aimone sisters used this interpretation to argue that Bruce and Joe's children were not beneficiaries under the terms of Gay's Trust.

[¶16]  The district court conducted a bench trial and heard testimony from Colleen, Chris, and several grandchildren, the Aimone family attorney, and the Aimone family accountant. It then concluded that clear and convincing evidence showed Gay's intent was not to disinherit her grandchildren regardless of whether they predeceased Martin. The district court reformed the trust, changing the "shall predecease Grantor and Grantor's Husband, then their share shall be distributed, on a per stirpes basis . . . ." language to "shall predecease Grantor or Grantor's Husband . . . ." Chris and Colleen appeal this ruling.

4

[¶17] The district court also determined, despite Colleen's position that the Aimone brothers were disinherited from Gay's Trust, she did not breach her fiduciary duties as trustee. The Aimone brothers appeal this ruling.

[¶18] The claims against Chris are related to her actions as sole manager of Martin Aimone Ranch, LLC. In April 2016, Chris' personal counsel informed the Aimone brothers that Martin's Deed of Gift that transferred 50% ownership to Bruce was invalid and that Chris, as manager of the LLC, amended the LLC's tax returns from 2012 to remove Bruce as a member. She also removed the Aimone brothers from other documentation involving the LLC. The Aimone brothers contended these actions were a breach of Chris' fiduciary duties to the LLC as she was acting in her own personal interest and for personal gain. Although the district court found the Deed of Gift to Bruce was valid, it concluded Chris did not violate her fiduciary duties to the LLC, and it did not remove her as manager. The Aimone brothers appeal these rulings.

## STANDARD OF REVIEW

[¶19] After a bench trial, we review the district court's findings of fact for clear error and legal conclusions de novo. *Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023) (citing *Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020)). The district court's fact findings are presumptively correct, but this Court can review all evidence in the record, giving due regard to the district court's credibility determinations and weighing of evidence. *Id.* Findings of fact will only be set aside if, although evidence to support such findings is present, the entirety of the evidence leaves this Court with the firm conviction a mistake was made. *Id.* "The interpretation of unambiguous trust agreements is a matter of law for the court." *Forbes v. Forbes*, 2022 WY 59, ¶ 31, 509 P.3d 888, 897 (Wyo. 2022) (*Forbes II*) (quoting *Forbes v. Forbes*, 2015 WY 13, ¶ 23, 341 P.3d 1041, 1051 (Wyo. 2015) (*Forbes I*)). Issues that require a different standard of review will be addressed separately.

## DISCUSSION

### I. The language of Gay's Trust was unambiguous in its intention for Gay's grandchildren to be included as beneficiaries.

[¶20] We first review the district court's decision to reform Gay's Trust to reflect Gay's intent. Trust interpretation is a matter of law we review de novo. *Gowdy v. Cook*, 2020 WY 3, ¶ 39, 455 P.3d 1201, 1210 (Wyo. 2020) (citing *Shriners Hosps. for Child. v. First N. Bank of Wyo.*, 2016 WY 51, ¶ 40, 373 P.3d 392, 405-06 (Wyo. 2016)). The primary purpose of trust interpretation is to determine the settlor's intent. *Id.* (citing *Shriners*, 2016 WY 51, ¶ 40, 373 P.3d 392, at 405-06). A settlor's intent is determined by the "plain language contained in the four corners of the document." *Forbes II*, 2022 WY 59, ¶ 41, 509 P. 3d at 899 (quoting *Jackson as Tr. of Phillip G. Jackson Fam. Revocable Tr. v. Montoya*, 2020

WY 116, ¶ 16, 471 P.3d 984, 988 (Wyo. 2020)). The trust document is construed as a whole and interpretation should "avoid a construction which renders a provision meaningless" with any apparent conflicting language reconciled by a reasonable, alternate interpretation rather than nullifying an apparent conflicting provision. *Forbes II*, at ¶ 42, 509 P.3d at 899 (citing *Gowdy*, 2020 WY 3, ¶ 39, 455 P.3d at 1210-11). Section headings and titles are given effect when interpreting the trust as a whole, unless the trust states otherwise. *Jackson*, 2020 WY 116, ¶ 18, 471 P.3d at 988 ("[Titles], like every other portion of a contract, may be looked to in determining its meaning, because headings and titles provide context and can inform the meaning of the sections they label." (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015))).

[¶21]   Unless the terms are ambiguous, the language of the trust controls and we do not consider extrinsic evidence. *See Prancing Antelope I, LLC v. Saratoga Inn Overlook Homeowners Ass'n*, 2021 WY 3, ¶ 26, 478 P.3d 1171, 1179 (Wyo. 2021) (citing *Four B Props. v. Nature Conservancy*, 2020 WY 24, ¶ 34, 458 P.3d 832, 841 (Wyo. 2020)). Trust terms are ambiguous if they convey a "double or obscure meaning." *See id.* (quoting *Ultra Res., Inc., v. Hartman*, 2010 WY 36, ¶ 23, 226 P.3d 889, 905 (Wyo. 2010)). Without ambiguity, the Court looks to the four corners of the document to interpret the trust language. *See id.* (citing *Claman v. Popp*, 2012 WY 92, ¶ 26, 279 P.3d 1003, 1013 (Wyo. 2012)).

[¶22]   The disputed language appears in Section (E)(B)(1)(3) of the First Amendment to Gay's Trust, which states:

> All other trust property shall be distributed to those of Grantor's Children who shall survive Grantor and Grantor's Husband, in equal shares; provided that if any of Grantor's Children (other than Christine Ellen Aimone) shall predecease Grantor and Grantor's Husband, then their share shall be distributed, on a <u>per stirpes</u> basis, to the issue of such predeceased Children[.]

[¶23]   Colleen and Chris argue the language stating trust property shall be distributed to the children who "survive Grantor *and* Grantor's husband" and the children who "predecease Grantor *and* Grantor's Husband" shall have their shares distributed per stirpes to their issue, shows Gay's intent to disinherit grandchildren whose parents survived Gay but predeceased Martin. Chris and Colleen argue using "and" several times throughout the document proves Bruce and Joe needed to survive or predecease both Gay and Martin for their children to be beneficiaries of Gay's Trust. Under Chris and Colleen's interpretation, Bruce and Joe's issue, Gay's grandchildren, would be disinherited due to the timing of Bruce and Joe's deaths. The district court disagreed and determined Gay's intent was clear and unambiguous and her grandchildren were intended beneficiaries. The district court relied on testimony and extrinsic evidence to reform Gay's Trust to mirror this intent.

6

[¶24]  We need not reform Gay's Trust to conclude that Gay intended for Bruce and Joe's children to be beneficiaries of her trust. Gay's Trust is unambiguous, and her intent as illustrated within the four corners of the document is clear. Section (E)(1)(A), under the "Family Trust" Section, is titled "Holding the Trust Undivided" and states "If the Grantor's Husband survives the Grantor, the Trustee shall hold said trust as it is then constituted, undivided, until the death of Grantor's Husband." This section shows Gay's intent that if she were to pass before Martin, there would be no distribution of her trust assets, and instead the trust would be held undivided until Martin's death. Section (E)(1)(B) then states "If the Grantor's Husband does not survive Grantor, or upon the death of Grantor's Husband, the Trustee shall pay over and distribute said trust, as it is then constituted as follows . . . ." Under the language of these subsections, distribution of the trust would only occur once both Gay and Martin passed away. This clear intention informs the amended distribution language that follows in Section (E)(1)(B)(3).

[¶25]  With this in mind, the trust language in the amendment to Gay's Trust clearly refers to the distribution event as the point when both Gay and Martin have passed. Given its context, the plain purpose of the language is not to condition the inheritances but instead to identify the children's status at the point of distribution and provide accordingly. The trust language does not express the intent that Bruce either survive both his parents or predecease both his parents for his children to inherit his share of the trust. Instead, it was clear that any of her children who predeceased the distribution event would pass their share to their children, "per stirpes." Any of her children who survived the distribution event would take their share as their own.

[¶26]  The trust language further states that the Aimone children who predecease Martin and Gay will pass their share "per stirpes" to their issue. We interpret trust language using common sense and good faith. *See Winter v. Pleasant*, 2010 WY 4, ¶ 9, 222 P.3d 828, 834 (Wyo. 2010) ("Common sense and good faith are leading precepts of contract construction . . . .") (quoting *Cent. Wyo. Med. Lab'y v. Med. Testing Lab, Inc.*, 2002 WY 47 ¶ 16, 43 P.3d 121, 127 (Wyo. 2002)); *Gowdy*, 2020 WY 3, ¶ 39, 455 P.3d at 1210 ("The meaning of a trust is determined by the same rules that govern the interpretation of contracts." (quoting *Shriners*, 2016 WY 51, ¶ 40, 373 P.3d at 405-06)). Under Colleen and Chris' desired interpretation, Bruce and Joe would have been entitled to an equal share of Gay's Trust had they been alive when Martin passed. Similarly, Bruce and Joe's children would have been entitled, on a per stirpes basis, to Bruce and Joe's shares if they both predeceased Gay. Because they both died after Gay but before Martin, Colleen and Chris contend the proper reading of the trust language disinherited Bruce and Joe's children. However, common sense strongly suggests Gay's intent was for her grandchildren to inherit, per stirpes, if any of Gay's children predeceased the distribution event. Colleen and Chris cannot offer a persuasive reason why Gay would have intended to disinherit her grandchildren based on the timing of her children's death. Instead, a more reasonable

7

interpretation supports Gay's intention to pass shares of the trust, per stirpes, to her grandchildren.

[¶27] Gay's Trust is clear and unambiguous that upon the distribution event, her living children were to take their share, and the shares of her children who predeceased the distribution event were to pass, per stirpes, to their issue.

## II. *The district court erred in determining Chris did not breach her fiduciary duties to the LLC and abused its discretion by failing to remove Chris as manager.*

[¶28] The Aimone brothers argue Chris violated her duties of loyalty, care, and good faith. They request Chris be held personally liable for damages caused to the LLC and be removed as manager of the LLC.

## A. Fiduciary Duties

[¶29] Managers of an LLC owe the company fiduciary duties of loyalty and care. Wyo. Stat. Ann. § 17-29-409(a); § 17-29-409(g)(i) ( 2021). The manager's duty of care and good faith requires the manager "to act with the care that a person in a like position would reasonably exercise under similar circumstances and in a manner the member reasonably believes to be in the best interests or at least not opposed to the best interests of the company." Wyo. Stat. Ann. § 17-29-409(c); § 17-29-409(g)(i). "Those duties require the manager to conduct business in a manner that the manager reasonably believes to be in the best interests or not opposed to the best interests of the company, to refrain from competing with the limited liability company, and to act in good faith." *Acorn v. Moncecchi*, 2016 WY 124, ¶ 35, 386 P.3d 739, 752 (Wyo. 2016). Managers are also prohibited from engaging in self-dealing or conflicts of interest under the duty of loyalty. *Id.* at ¶¶ 39-40, 386 P.3d at 752-53; Wyo. Stat. Ann. § 17-29-409(b) (A trustee has a duty "[t]o refrain from dealing with the company in the conduct . . . of the company's activities as or on behalf of a person having an interest adverse to the company[.]"). Self-dealing or conflicts of interest are not defined by statute but preclude a manager from having an interest adverse to the company. *Acorn*, 2016 WY 124, ¶ 40, 386 P.3d at 752-53; *see* Wyo. Stat. Ann. § 17-29-102. The burden is on the claimant to show the manager has an interest adverse to the LLC, but once such a showing is made the burden is on the manager to show the action was fair. *Id.* at ¶ 40, 386 P.3d at 752-53.

[¶30] Before Martin and Bruce's passing, Martin, as trustee of his trust, passed the trust's 50% membership interest in the LLC to Bruce through a Deed of Gift. Bruce's interest was confirmed by tax returns and appraisals and was undisputed by Chris for several years. It was not until Chris hired personal counsel from Utah in 2016 that she for the first time disputed the validity of the Deed of Gift and filed amended LLC tax documents to remove Bruce as a member. Chris also struck Bruce's four children from other LLC forms, putting the LLC at risk of losing permits and being subjected to fines. Invalidating the Deed of Gift

8

and removing Bruce as a member increased Chris and Colleen's ownership in the LLC at the expense of the Aimone brothers.

[¶31] The district court determined that Chris did not violate her duty of loyalty by disputing whether the Aimone brothers were members of the LLC and withholding LLC information and distributions. It concluded that she could not have known the extent of their interests until a court determination. It further held that until such a disposition, Chris maintained the status quo of the LLC and did not act in opposition to the LLC. *See In re Kite Ranch, LLC v. Powell Fam. of Yakima, LLC*, 2008 WY 39, ¶¶ 29-30, 181 P.3d 920, 928-29 (Wyo. 2008).

[¶32] These findings, however, are clearly erroneous. Chris did not maintain the status quo; she acted on her belief before a court decision by amending tax documents and permits, and treating Bruce's children as if they had no interest in the LLC. These actions were not reasonable under the circumstances. If there was a true dispute as to ownership interests in the LLC, a reasonable manager would have waited for a court determination before making changes to the LLC's membership. Her actions do not demonstrate a reasonable belief she was acting in the best interests of the LLC and not for personal gain.

[¶33] In some actions, reliance on advice of counsel can be a defense to an alleged breach of a fiduciary duty. Wyo. Stat. Ann. § 17-29-409(c); *Mattheis Co. v. Town of Jackson*, 2019 WY 78, ¶ 20, 444 P.3d 1268, 1276 (Wyo. 2019); *Flippo v. CSC Assocs. III*, 547 S.E.2d 216, 221-22 (Va. 2001). Wyoming's LLC statute states, "[i]n discharging this duty [of care], a [manager] may rely in good faith upon opinions, reports, statements or other information provided by another person that the member reasonably believes is a competent and reliable source for the information." Wyo. Stat. Ann. § 17-29-409(c); *see* § 17-29-409(g)(i). Advice of counsel defense is available only when such reliance is in good faith and the manager "reasonably believes [counsel] is a competent and reliable source for the information." *Id.* The defense is not, however, absolute. To assert reliance on counsel as a defense, a manager must have sought the legal advice in good faith and for the benefit of the company, not as an individual. *Flippo*, 547 S.E.2d at 221-22.

[¶34] Chris is not insulated from liability by her reliance on counsel. Like in *Flippo*, Chris sought advice of personal counsel for personal gain, rather than seeking counsel for the LLC's benefit. She did not dispute Bruce's interest in the LLC until she received advice from her personal counsel. Chris' personal counsel was not a reasonable and reliable source of legal advice for LLC business, and a reasonable individual would recognize the inherent conflict of interest associated with personal advisement of business-related interests. The district court erred in determining Chris did not breach her fiduciary duty to the LLC by relying on advice of her personal counsel.

9

## B. Damages

[¶35]   Because we determined Chris breached her fiduciary duties to the LLC, she may be liable for damages caused. Damages must be proven to a reasonable degree of certainty but need not be exact. *Gill v. Lockhart*, 2022 WY 87, ¶ 34, 512 P.3d 971, 981 (Wyo. 2022) ("A plaintiff has the burden of producing evidence to prove his damages to a reasonable degree of certainty" and "where the amount of damages has not been determined before the entry of the judgment, it makes sense to apply a similar burden of proof."); *Goforth v. Fifield*, 2015 WY 82, ¶ 40, 352 P.3d 242, 250 (Wyo. 2015) (holding a damages award for $57,820 was not adequately supported by evidence and therefore improper). "A court may not resort to speculation or conjecture in determining the proper amount to award." *Gill*, 2022 WY 87, ¶ 39, 512 P.3d at 982 (quoting *Mantle v. N. Star Energy & Constr. LLC*, 2019 WY 29, ¶ 78, 437 P.3d 758, 786 (Wyo. 2019)).

[¶36]   The district court determined that the Aimone brothers may be entitled to damages once Chris gave an accounting of the LLC. Because damages had not been determined before entry of judgment, it was the Aimone brother's burden to establish them when seeking entry of the judgment. *See id.* at ¶ 34, 512 P.3d at 981. The district court gave them forty-five days to petition the court for additional relief after they received the accounting. It is unclear when Chris gave an accounting of the LLC, however, nothing in the record shows the Aimone brothers petitioned the court forty-five days after receiving the accounting with damages calculated to a reasonable degree of certainty. Therefore, they failed to carry their burden at the district court to establish damages to a reasonable degree of certainty and cannot now recover. Because the Aimone brothers had an opportunity to prove damages and did not do so, we decline their invitation to remand for a damages calculation.

## C. Removal as Manager

[¶37]   The Aimone brothers also requested Chris be removed as manager of the LLC due to her conduct. The district court's determination to remove or not to remove a fiduciary is reviewed for an abuse of discretion. *Acorn*, 2016 WY 124, ¶ 71, 386 P.3d at 760 (citing *Forbes I*, 2015 WY 13, ¶ 33, 341 P.3d at 1053). The brothers brought their claim through a derivative action which allows a member of an LLC to enforce a right of a limited liability company, after first making a demand the LLC bring an action, or show a demand would be futile. Wyo. Stat. Ann. § 17-29-902. Ben, Matt, Bo, and Jon each have a 1/56 substitute member interest that allows them to bring the derivative action and have adequately shown why a demand to the LLC would be futile. They are seeking to enforce their right to remove a manager as provided in the LLC's operating agreement: "A Manager may be removed prior to an annual meeting only for cause at a special meeting of Members called expressly for such purpose." The operating agreement does not define "for cause."

[¶38]  Our case law does not directly address removal of an LLC's manager for breach of fiduciary duties but does address removal of individuals in similar fiduciary positions. "Generally, the court will not remove a testamentary trustee absent a demonstrated abuse of power." *Forbes I*, 2015 WY 13, ¶ 30, 341 P.3d at 1052 (quoting *In re Estate of Klarner*, 113 P.3d 150, 157 (Colo. 2005)). In a trustee-beneficiary relationship, we have determined that breach of fiduciary duties is a sufficient reason to remove a trustee from her position. *Acorn*, 2016 WY 124, ¶ 73, 386 P.3d at 760-61. In *Acorn*, the district court determined that "multiple intentional acts, done by [trustee] in bad faith, and with favoritism shown toward certain beneficiaries, reach[ed] the proper showing needed for her removal as trustee." *Id.* at ¶ 71, 386 P.3d at 760. Hostility alone, however, is not sufficient to remove a fiduciary. *Id.* at ¶ 73, 386 P.3d at 760.

[¶39]  In *Forbes I*, a trustee of a family trust engaged in self-dealing in a series of complex land and trust share transactions. 2015 WY 13, ¶ 64, 341 P.3d at 1059. After the transactions, the trustee, in her personal capacity, gained an additional twenty-two shares of the trust, worth several hundred thousand dollars, at the expense of contributing 320 acres of real property, worth over a million dollars, back to the family trust. *Id.* at ¶¶ 64-65, 341 P.3d at 1059. At the time of the transaction, her co-trustees agreed the transaction between the trust and the trustee was fair. *Id.* at ¶ 65, 341 P.3d at 1059. This Court determined that, although she breached her duty of loyalty by engaging in self-dealing, such a breach was not sufficient to remove her as trustee because there was no evidence she personally gained, or intended personally to gain from the transactions, and without such showing, a demonstrated abuse of power could not be shown. *Id.* at ¶¶ 69, 95, 341 P.3d at 1060, 1065.

[¶40]  Although Chris is a manager and not a trustee, this situation is similar to *Acorn* where a family-selected fiduciary took improper actions that treated certain beneficiaries or members more favorably than others. Chris acted to decrease the Aimone brothers' interest in the LLC by disputing the Deed of Gift and hiring personal counsel to do so. If successful, this attempt would have directly benefited Chris and Colleen personally, to the detriment of the other members. There is clear evidence of an intention to gain personally from contesting Bruce's children's ownership in the LLC, and the district court thus abused its discretion in failing to remove Chris as manager of the LLC.

### III.    The district court erred in determining Colleen did not breach her fiduciary duties to Gay's Trust.

### A.  Fiduciary Duties

[¶41] Gay's Trust was executed and amended before the enactment of Wyoming's Uniform Trust Code which applies to trusts created on or after July 1, 2003, with certain exceptions. Wyo. Stat. Ann. § 4-10-1103(a)(i). Trusts created before this date can still be governed by Wyoming's UTC if, in cases such as this where the settlor is not living, "all

11

qualified beneficiaries and the trustee consent to the application" or the district court determines "the interests of the nonconsenting qualified beneficiaries will be adequately protected." Wyo. Stat. Ann. § 4-10-1103(c) (2021). The record does not contain consent from the qualified beneficiaries or a determination by the district court that Wyoming's UTC adequately protects the beneficiaries. Therefore, the UTC does not govern this dispute.

[¶42]   Instead, we must rely on the law at the time of the trust and amendment execution which occurred on March 20, 1997, when Gay amended her trust. *See Forbes I*, 2015 WY 13, ¶ 27, 341 P.3d at 1051-52. Under the Uniform Trustees' Powers Act, a trustee had "the power to perform . . . every act which a prudent man would perform for the purposes of the trust . . . ." Wyo. Stat. Ann. § 4-8-103(a) (1997) (*repealed by* Wyo. Stat. Ann. § 4-10-815 (2003)). Beyond the statutory duties, a trustee also owes a common-law duty of loyalty to the beneficiaries of a trust and must "administer the trust solely in the interest of the beneficiary . . . [and] is under a duty to the beneficiary to deal fairly with him . . . ." *Forbes I*, 2015 WY 13, ¶ 28, 341 P.3d at 1052 (quoting Restatement (Second) of Trusts § 170 (1959)); *accord Kerper v. Kerper*, 780 P.2d 923, 929 (Wyo. 1989) ("The common[-]law duty of loyalty is the fundamental duty from which each more specific trustee's duty is derived."). A trustee has a duty of good faith defined as "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Forbes I*, 2015 WY 13, ¶¶ 25-26, 341 P.3d at 1051 (quoting *Wells Fargo Bank Wyo., N.A. v. Hodder*, 2006 WY 128, ¶ 33, 144 P.3d 401, 413 (Wyo. 2006)).

[¶43]   Like Chris, Colleen first contested the terms of Gay's Trust after she hired personal counsel. A trustee also has a duty to deal fairly with all beneficiaries and manage the trust assets in their best interests. *See id.* at ¶ 68, 341 P.3d at 1060; *Forbes II*, 2022 WY 59, ¶¶ 45, 48, 509 P.3d at 900, 901. In *Forbes I*, we determined it was necessary for the trustees engaging in self-dealing to retain separate counsel to advise the trust so that other trust beneficiaries would be treated fairly. *See* 2015 WY 13, ¶¶ 65, 68, 341 P.3d at 1060. Colleen failed to meet these requirements. Instead, Colleen hired and relied on personal counsel, under the guise of counsel advising the trust, to eliminate other trust beneficiaries. By disputing that Bruce and Joe's children were beneficiaries, Colleen's share of Gay's Trust would increase substantially at the expense of the Aimone brothers' inheritance. She elevated her personal interests over the interests of other beneficiaries and thereby did not deal fairly with all beneficiaries.

[¶44]   A trustee may be held liable for breach of fiduciary duties when she advocates as a trustee for an interpretation of the trust that favors herself as a beneficiary and acts without court instruction. *See Matter of W.N. Connell & Marjorie T. Connell Living Tr.*, 393 P.3d 1090, 1094 (Nev. 2017) (citing Restatement (Third) of Trusts § 79(1) (2007)); *see also* 76 Am. Jur. 2d Trusts § 359 (2005) ("Trustees owe a duty to all trust beneficiaries, and

12

must treat all equally. . . . A trustee who violates [the duty] to deal impartially with all beneficiaries risks exposure to liability for breach of trust."). In *Matter of W.N. Connell*, a settlor created two trusts, funded predominantly by oil and gas leases, one for his wife, Marjorie, and one for his daughter, Eleanor. Marjorie's trust was to receive 65% of the royalties and Eleanor's trust was to receive 35%. Marjorie was originally trustee of both trusts but she later appointed Eleanor as co-trustee. *Id.* at 1091. Before Marjorie's death, she created a living trust that would pass her 65% interest to her grandchildren, Eleanor's children. After Marjorie's death, Eleanor, as trustee, distributed the royalty income as provided, the 65% interest passed to Eleanor's children, and Eleanor received 35%. However, after four years, Eleanor ceased royalty distributions and claimed 100% ownership of the royalties. Eleanor's children brought suit against her, alleging she breached her fiduciary duties as trustee and requesting reinstatement of their 65% royalty payments. *Id.* at 1092. The court granted summary judgment to Eleanor's children stating, "Eleanor breached her fiduciary duties of impartiality and to avoid conflicts of interest when she unilaterally ceased distributions to respondents without seeking court instructions and when she advocated as trustee for a trust interpretation favoring herself as beneficiary[.]" *Id.* at 1094.

[¶45] Similarly, Colleen, as trustee, advocated for an interpretation of Gay's Trust that favored her at the expense of disinheriting the other beneficiaries, and relied on personal counsel in making such a claim. She failed to distribute Gay's Trust and did not seek a declaratory judgment until after suit was brought against her. Her actions did not benefit the trust and only benefitted herself personally, as beneficiary to Gay's Trust.

[¶46] Colleen's reliance on counsel is also misplaced in this scenario because her reliance, like Chris', was not reasonable or in good faith. A reasonable person would recognize the inherent conflict in her reliance on advice from personal counsel and it was her duty to avoid such conflicts. *See id.* at 1094. This defense fails and Colleen's actions as trustee violated her fiduciary duties to the other beneficiaries. The district court erred when it determined Colleen did not breach her fiduciary duties to Gay's Trust.

## B. Damages

[¶47] The Aimone brothers request this Court remand to the district court for a determination of damages. They do not ask for Colleen to be removed as trustee of Gay's Trust.

[¶48] In its original order, the district court ordered Colleen to provide an accounting of the assets held by Gay's Trust within thirty days. It further provided that there was no evidence of damages from Colleen's failure to distribute trust assets, but if the Aimone brothers perceived a loss to the trust when they received the accounting, they had thirty days to petition for additional relief. In September, after the Aimone brothers filed a Petition for Additional Relief, the district court again ordered Colleen to provide an

13

accounting of Gay's Trust. The order provided Gay's Trust would be required to reimburse the Aimone brothers, if they could show damages arising from the tax return amendment or Colleen's failure to report the brothers as beneficiaries. Colleen did eventually provide the Aimone brothers an accounting of Gay's Trust and the district court determined Colleen had satisfied her responsibilities under the original order, despite the Aimone brothers' contention the accounting was not complete. The record does not show the Aimone brothers presented the court with a request for damages to a reasonable degree of certainty within the thirty-day period the district court allowed.

[¶49] The Aimone brothers have failed to prove damages to a reasonable degree of certainty. They are therefore not entitled to damages despite Colleen's breach of her fiduciary duties.

### IV.     The district court did not err in determining the Aimone brothers did not properly bring their no-contest clause claim.

[¶50] The Aimone brothers argue Chris and Colleen violated the no-contest clause in Gay's Trust. However, the issue was not raised until after trial and the district court denied the motion because it was not properly brought before the court. We review the denial of a post-trial motion for abuse of discretion. *Carroll v. State ex rel. Dep't of Fam. Servs., Child Support Enf't Div.*, 2022 WY 88, ¶ 6, 513 P.3d 144, 146 (Wyo. 2022) (citing *Est. of Dalhke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶ 27, 319 P.3d 116, 124 (Wyo. 2014)). The Aimone brothers did not raise the no-contest clause issue until several months after the district court's order and two years after trial. The Aimone brothers offer no authority to support their argument that the district court should have considered their no-contest clause petition. Post-trial motions cannot be utilized to retry arguments presented at trial or argue under different theories. 56 Am. Jur. 2d *Motions, Rules, and Orders* § 40, Westlaw (database updated February 2023). This issue was not properly brought before the district court, and it did not abuse its discretion in refusing to consider the new argument. *See* W.R.C.P. Rule 60(b); *Hammons v. Table Mountain Ranches Owners Ass'n, Inc.*, 2003 WY 85, ¶ 21, 72 P.3d 1153, 1156-57 (Wyo. 2003) (citing *Beyah v. Murphy*, 825 F.Supp. 213, 214 (E.D. Wis. 1993)).

### CONCLUSION

[¶51] Gay's Trust was clear and unambiguous that all of her grandchildren were intended beneficiaries of her trust. Chris breached her fiduciary duties to the LLC and should be removed as manager. Colleen also breached her fiduciary duties to Gay's Trust but the Aimone brothers failed to prove damages to a reasonable degree of certainty. The Aimone brothers did not properly raise their argument regarding the no-contest clause. We affirm in part and reverse in part.