# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 19

OCTOBER TERM, A.D. 2023

February 8, 2024

DAVID SPURLOCK,

**Appellant**
**(Counterclaim Defendant),**

v.                                                                          S-23-0126

WYOMING TRUST COMPANY,

**Appellee**
**(Counterclaim Plaintiff).**

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
> William P. Schwartz and Leah C. Schwartz of Ranck & Schwartz, LLC, Jackson, Wyoming. Argument by Ms. Schwartz.

*Representing Appellee:*
> Anthony T. Wendtland, Debra J. Wendtland, and Noah S. Grovenstein of Wendtland & Wendtland, LLP, Sheridan, Wyoming. Argument by Mr. Wendtland.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    David Spurlock[1] appeals from the district court's order granting summary judgment on Wyoming Trust Company's (the Trustee) counterclaim.   The district court found David's lawsuit to remove the Trustee triggered a no-contest clause resulting in his disinheritance from the C.E. Spurlock Revocable Trust (the Trust).   We reverse and remand.

## ISSUE

[¶2]    Did the district court err when it found David Spurlock's lawsuit to remove the Trustee triggered the Trust's no-contest clause?[2]

## FACTS

[¶3]    David and his three siblings are the beneficiaries of the Trust, which was created by their father, C.E. Spurlock, on March 5, 1997, and subsequently amended on November 2, 2007.  The Trust gave David the right to purchase certain real property belonging to the Trust at a discounted price upon C.E.'s death.  In July 2016, C.E. was admitted to a care facility in Lander, Wyoming.  In September 2016, the Trustee notified David he had until October 12, 2016, to exercise his option to purchase the property.[3]  David and his wife, Andrea, exercised this option and closed on the property in December 2016.  When they subsequently entered the property, they discovered cracked and ruptured pipes, which resulted in flooding that caused over $80,000 in damages.

[¶4]    David and Andrea initially filed a lawsuit against David's brother, Charlie, who they believed to be responsible for the damage to the property.  They alleged Charlie willfully turned off the heat causing the pipes to freeze.  Through discovery in that case, Charlie alleged it was the Trustee who was responsible for maintaining the property at all relevant times.  David and Andrea voluntarily dismissed the lawsuit against Charlie.

[¶5]    David and Andrea then filed a lawsuit against the Trustee and its officers asserting causes of action for fraud, negligence, and intentional infliction of emotional distress.  They

---

[1] Because this case involves related individuals with the same last name, we will refer to them by their first names for clarity.

[2] David also raised the issue of whether enforcing the no-contest clause under these circumstances would violate public policy.  However, because we find his lawsuit did not trigger the no-contest clause, we will not address this issue.

[3] Under amended Paragraph 3.4(D), David was entitled to purchase this real property if C.E. still owned it at the time of his death.  The provision did not contain a contingency for what should happen if C.E. vacated the property before his death.  However, pursuant to Paragraph 6.4, the Trustee had the power to sell real property belonging to the Trust during C.E.'s lifetime.  The parties do not raise any issues regarding the Trustee's decision to give David the option to purchase the property prior to C.E.'s death.

1

also sought to remove the Trustee in part due to the real estate transaction, but also because the Trustee allegedly had not provided accountings or complied with the Trust's instructions for dividing assets. The complaint specifically stated the lawsuit should not be construed as a challenge to the Trust.

[¶6] The Trustee filed a motion to dismiss on the grounds of improper venue. The Trustee also asserted David did not plead the fraud claim with the requisite particularity, and the claim of intentional infliction of emotional distress failed to allege the Trustee's conduct was extreme or outrageous. The Trustee also filed an answer, which contained what it claimed was a "compulsory counterclaim." The counterclaim alleged Paragraph 7.2 of the Trust "specifie[d] the only manner for removal of a trustee." That provision states in relevant part:

> 7.2. Removal or Resignation of TRUSTEE. Any TRUSTEE, other than SETTLOR, may be removed upon not less than thirty (30) days written notice by the following persons during the following periods:
>
>     1. By the SETTLOR during SETTLOR's lifetime and continued capacity.
>
>     2. After the death or incapacity of SETTLOR by a majority of all the then living children of the SETTLOR who are under no legal disability.

The Trustee asked the district court to declare David's action in filing the lawsuit "necessarily terminated his interest in the Trust" under Paragraph 10.6 of the Trust, which states:

> 10.6 Noncontest and Litigation Provision. The SETTLOR desires that this trust, the trust estate and the trust administrators and beneficiaries shall not be involved in time consuming and costly litigation concerning the function of this trust and disbursement of the assets. Furthermore, the SETTLOR has taken great care to designate through the provisions of this trust how he wants the trust estate distributed. Therefore, if a beneficiary or representative of a beneficiary or if anyone claiming a beneficial interest in the trust estate or any part thereof should legally challenge or should in any way attempt to impair the function and operation of this trust, its provisions or asset distributions, then all asset distributions to said challenging beneficiary or to the beneficiary upon whose benefit said challenge is raised shall be retained in trust and

2

distributed to the remaining beneficiaries named herein as if said challenging beneficiary or the beneficiary to be benefitted by said challenge and his or her issue had predeceased the distribution of the trust estate. The defense of such litigation, including costs incurred by the representatives of the SETTLOR'S estate, the TRUSTEE of this trust and their agents, attorneys, accountants and representatives shall be paid for by the trust.

The Trustee asked the district court to find David was no longer a beneficiary of the Trust, and he had no standing to remove the Trustee.

[¶7]    David did not file an answer to the counterclaim, and the Trustee moved for entry of default. After the Clerk entered default against David, the Trustee moved for default judgment on its counterclaim. David filed a pro se letter explaining his attorney had not informed him about the counterclaim or the default and asked for time to find competent replacement counsel.

[¶8]    David's original attorney subsequently filed a motion to dismiss the counterclaim, arguing the district court did not have jurisdiction over the Trust, and the lawsuit was to protect the assets of the Trust, not to impair the function or operation of the Trust. Shortly thereafter, David's new counsel filed a motion to set aside the default, a motion to amend the complaint, and a response to the motion to dismiss.

[¶9]    The district court denied David's motion to amend the complaint, granted the Trustee's motion to dismiss the fraud, negligence, and removal of trustee claims without prejudice on the grounds of improper venue, and dismissed the intentional infliction of emotional distress claim with prejudice for failure to state a claim under Rule 12(b)(6) of the Wyoming Rules of Civil Procedure (W.R.C.P.). The district court also granted David's motion to set aside the entry of default on the counterclaim.

[¶10]   The Trustee moved for summary judgment on its counterclaim. The Trustee again alleged David's lawsuit "from its commencement through dismissal" violated the no-contest clause found in Paragraph 10.6. The Trustee alleged the removal provisions in Paragraph 7.2 were "mandatory and specific" and prohibited court involvement. The Trustee asserted it was "undisputed" David's motion to remove the Trustee "in direct contradiction to Paragraph 7.2 of the Trust is a violation of the No[-]Contest paragraph of the Trust." As such, David had to be disinherited and his share distributed to the remaining beneficiaries. The Trustee also asserted David's lawsuit impaired the function and operation of the trust because it delayed asset distribution and caused the Trust to incur litigation costs.

[¶11] David filed a cross-motion for summary judgment. He asserted the no-contest clause did not prohibit all litigation. Instead, it only applied to a beneficiary who "legally challenge[d]" the trust or in any way attempted "to impair the function and operations of [the] [T]rust, its provisions or asset distributions." He again asserted the lawsuit was not an attempt to impair the Trust but was instead intended to uphold and enforce the terms of the Trust. He noted he sued the Trustee in its fiduciary capacity, and any damages would have been awarded against the Trustee, not the Trust. Therefore, his lawsuit did not fall within the language of the no-contest provision.

[¶12] The district court granted the Trustee's summary judgment motion and denied David's cross-motion for summary judgment. It found:

> Here, there is no dispute – this is a valid trust, and this is a valid no-contest clause. Overall, the language and intent of this provision is clear. It was the Settlor's intent to avoid costly litigation, and to prevent a beneficiary from, among other things, to "in anyway [sic] attempt to impair the function or operations of this trust." As such, the court expressly finds that Mr. David Spurlock's December 7, 2020, *Complaint*, by attempting to forcibly remove the trustee through litigation, in contravention of the express trust provisions, triggered paragraph 10.06 [sic] of the Trust.
>
> In his *Complaint* (¶45-¶49) Mr. Spurlock expressly sought through litigation to remove the trustee. This is in contravention of not only the plain language and purpose of the trust's no contest provision, but it directly contradicts the trust's provisions regarding the manner and method of removing the trustee. While Mr. Spurlock attempts to avoid triggering the no-contest provision by asserting that the lawsuit is against the [Trustee] and not the trust, simply saying it so does not make it so. His actions and the specific requests set forth in the *Complaint* expressly trigger the no-contest provision.
>
> By seeking to forcibly remove the trustee by court order, Mr. Spurlock has not only generated costly and protracted litigation he has attempted to impair the function and/or operation of the trust and its provisions. In particular, paragraph 7.2(2) of the trust, which provides the express manner and method by which a trustee may be removed . . . . Additionally, paragraph 7.3 of the trust provides there is no need to obtain court involvement. Thus, by filing a lawsuit and

4

seeking to remove the trustee by court order, Mr. Spurlock has impaired or attempted to impair the function of the trust, all of which resulted in costly litigation. The plain language of the no-contest provision seeks to prevent one beneficiary from doing exactly what Mr. Spurlock has done.

David timely appealed the district court's order to this Court.

## STANDARD OF REVIEW

[¶13] "We review a district court's ruling on summary judgment de novo." *Falkenburg v. Laramie Inv. Co., Inc.*, 2023 WY 78, ¶ 5, 533 P.3d. 511, 514 (Wyo. 2023) (quoting *Wilcox v. Sec. State Bank*, 2023 WY 2, ¶ 26, 523 P.3d 277, 284 (Wyo. 2023)). We "evaluate the same materials[] and apply the same standards as the district court." *Id.* (citing *Wilcox*, ¶ 26, 523 P.3d at 284). When there are no contentions that any genuine issues of fact exist, "our concern is strictly with the application of the law." *Coffinberry v. Bd. of Cnty. Comm'rs of Cnty. of Hot Springs*, 2008 WY 110, ¶ 3, 192 P.3d 978, 980 (Wyo. 2008) (quoting *Wyo. Cmty. Coll. Comm'n v. Casper Cmty. Coll. Dist.*, 2001 WY 86, ¶ 11, 31 P.3d 1242, 1247 (Wyo. 2001)). We accord no deference to the district court's conclusions on questions of law. *Yeager v. Forbes*, 2003 WY 134, ¶ 12, 78 P.3d 241, 246 (Wyo. 2003).

[¶14] Interpretation of a trust is also a matter of law we review de novo. *Aimone v. Aimone*, 2023 WY 43, ¶ 20, 529 P.3d 35, 42 (Wyo. 2023) (citing *Gowdy v. Cook*, 2020 WY 3, ¶ 39, 455 P.3d 1201, 1210 (Wyo. 2020)). "The primary purpose of trust interpretation is to determine the settlor's intent." *Id.* We determine the settlor's intent from the "plain language contained in the four corners of the document." *Id.* (quoting *Forbes v. Forbes*, 2022 WY 59, ¶ 41, 509 P. 3d 888, 899 (Wyo. 2022)). We construe the trust document as a whole and "'avoid a construction which renders a provision meaningless' with any apparent conflicting language reconciled by a reasonable, alternate interpretation rather than nullifying an apparent conflicting provision." *Id.* (quoting *Forbes*, 2022 WY 59, ¶ 42, 509 P.3d at 899).

## DISCUSSION

[¶15] "No-contest clauses are valid in Wyoming." *Matter of Phyllis V. McDill Revocable Tr. (McDill)*, 2022 WY 40, ¶ 23, 506 P.3d 753, 761 (Wyo. 2022) (quoting *Gowdy*, 2020 WY 3, ¶ 39, 455 P.3d at 1210). "The intent of the settlor regarding contests to the trust is controlling." *Gowdy*, ¶ 39, 455 P.3d at 1210 (citing *EGW v. First Fed. Savings Bank of Sheridan*, 2018 WY 25, ¶ 19, 413 P.3d 106, 111 (Wyo. 2018)). "A settlor is free to incorporate whatever lawful terms []he wants into [his] trust." *Id.* at ¶ 44, 455 P.3d at 1211 (citing *Wells Fargo Bank Wyo., N.A. v. Hodder,* 2006 WY 128, ¶ 29, 144 P.3d 401, 411 (Wyo. 2006)). "In determining the [settlor's] intent, we can only determine that intent from what the [trust] says; we are not free to write terms in the [trust] that do not, in reality,

appear there." *Dainton v. Watson*, 658 P.2d 79, 81 (Wyo. 1983) (citations omitted); *see also Forbes*, 2022 WY 59, ¶ 41, 509 P.3d at 899 (quoting *Jackson as Tr. of Phillip G. Jackson Fam. Revocable Tr. v. Montoya*, 2020 WY 116, ¶ 16, 471 P.3d 984, 988 (Wyo. 2020)) ("To determine the settlor's intent, the Court looks to the 'plain language contained in the four corners of the document.'").

[¶16]   While Paragraph 10.6 expresses a desire to avoid litigation, contrary to the Trustee's position, it does not "prohibit[] litigation outright."  Giving it such an interpretation would nullify other portions of the Trust.  At least two other provisions of the Trust specifically authorize a beneficiary to file litigation.  First, Paragraph 7.1 specifically allows any beneficiary to petition a court to appoint a successor trustee if the beneficiaries cannot unanimously agree on who the successor trustee should be if the persons named in the Trust are unwilling or incompetent to serve.  Second, Article XII of the Trust gives the Trustee discretion to postpone distributions to the beneficiaries under certain circumstances.  "To safeguard the rights of the beneficiary," Paragraph 12.5 allows a beneficiary to apply to a court for a "judicial determination as to whether the TRUSTEE reasonably adhered" to the standard set forth in the Trust for withholding distributions.  We must interpret the Trust as a whole and avoid an interpretation which renders any provision meaningless. *Aimone*, 2023 WY 43, ¶ 20, 529 P.3d at 42 (citing *Forbes*, 2022 WY 59, ¶ 42, 509 P.3d at 899).  Because the Trust specifically allows a beneficiary to bring some forms of litigation, we cannot interpret the no-contest clause as prohibiting all litigation.

[¶17]   By its plain language, the no-contest clause applies only when a beneficiary legally challenges the Trust or "attempt[s] to impair the function and operation of [the] [T]rust, its provisions or asset distributions . . . ."  David's lawsuit sought the following relief: damages against the Trustee, not the Trust, related to the real estate transaction; to enjoin the Trustee from committing further breaches of trust; to compel the Trustees to redress their breaches of trust by paying money or restoring property; to order the Trustee to provide an accounting; suspend the Trustee from taking further action on behalf of the Trust; and to deny compensation to the Trustee, "all as allowed by Wyoming Statute § 4-10-1001."  The lawsuit did not challenge or seek to modify any of the Trust's provisions or distributions.

[¶18]   The Trustee's primary argument is that the lawsuit to remove the Trustee was filed in contravention of Paragraphs 7.2 and 7.3, and it impaired the function and operation of the Trust by involving the Trust in costly litigation.  Throughout the lawsuit, the Trustee claimed Paragraphs 7.2 and 7.3 provided the exclusive method for removing the Trustee.  However, at oral argument, the Trustee conceded these provisions were not exclusive, and they did not replace the statutory process for removal of a trustee.

[¶19]   The plain language of Paragraph 7.2 shows this provision is permissive and not exclusive.  The provision states a trustee "may" be removed by a majority of the beneficiaries.  Pursuant to Paragraph 7.3, if the beneficiaries choose to use this method to remove the trustee, the removal is effective without any court proceeding.  "We have, in a

6

number of instances, noted that the term 'may' connotes permissive authority and does not structure a mandatory requirement." *In re RVR*, 2022 WY 153, ¶ 22, 520 P.3d 1158, 1164 (Wyo. 2022) (quoting *In re WJH*, 2001 WY 54, ¶ 14, 24 P.3d 1147, 1152–53 (Wyo. 2001)). The inclusion of Paragraphs 7.2 and 7.3 in the Trust did not prohibit David or any of the other beneficiaries from bringing a lawsuit to remove the Trustee for cause under Wyoming Statute § 4-10-1001. In fact, Paragraph 7.8 recognizes a trustee could be liable for a loss or depreciation in value that occurred as the result of "the actual fraud, gross negligence or wilful [sic] misconduct or default of the TRUSTEE[,]" and it states "[g]ood faith and fiduciary responsibility shall be required of the TRUSTEE at all times . . . ." Holding a trustee responsible for such losses or for breaches of fiduciary responsibility could require the filing of a lawsuit. Further, Paragraph 7.11 allows a trustee who was "removed for incompetency" at the determination of a physician to petition a court for reinstatement, or it allows a court to confirm that trustee's removal. This further demonstrates the removal method set forth in Paragraph 7.2 is not exclusive. The district court erred when it found Paragraphs 7.2 and 7.3 provided the exclusive method for removing the Trustee.

[¶20] While we have not had an opportunity to directly address this issue, other jurisdictions have recognized bringing a lawsuit to remove a trustee for cause does not constitute a challenge to a trust. *See Winston v. Winston*, 449 S.W.3d 1, 7–8 (Mo. Ct. App. 2014) (finding a petition to remove the trustee did not violate a no-contest clause because it acknowledged the validity of the trust, "and the relief sought [was] based on circumstances outside the trust instruments" that could not have been foreseen when the trust was drafted); *Fazzi v. Klein*, 119 Cal. Rptr. 3d 224, 230–32 (Cal. Ct. App. 2010) (holding the request to remove the trustee for cause was not a challenge to the trust, but a request to change the named successor beneficiary was a challenge to the trust); *Conte v. Conte*, 56 S.W.3d 830, 832–33 (Tex. App. 2001) (holding a no-contest clause did not prohibit an action to remove the trustee). These holdings are based in part on the policy that "a trustee cannot 'hide behind a no[-]contest clause' and commit breaches of fiduciary duty with impunity." *Fazzi*, 119 Cal. Rptr. 3d at 232.

[¶21] This case differs from others where we found no-contest clauses were triggered because David was not seeking to void, nullify, or set aside any of the Trust's provisions. *See, e.g., McDill,* 2022 WY 40, ¶¶ 23–26, 506 P.3d at 761 (finding the no-contest clause was triggered by the filing of an unsuccessful lawsuit seeking to contest, attack, impair, or invalidate the trust); *Gowdy*, 2020 WY 3, ¶ 41, 455 P.3d at 1211 (finding the no-contest provision was triggered because the action went beyond correcting improprieties committed by the trustee and/or trust protector and sought to change the qualifications for a corporate fiduciary to serve as successor trustee); *Briggs v. Wyo. Nat'l Bank of Casper,* 836 P.2d 263, 265–66 (Wyo. 1992) (finding the no-contest provision was triggered by filing of an action to invalidate the trust for violating the elective share statute); *Dainton*, 658 P.2d at 80–81 (finding the no-contest clause was triggered by filing a lawsuit to challenge the will on the grounds of undue influence). David's lawsuit was aimed at correcting improprieties allegedly committed by the Trustee. It did not seek to change or

modify any portion of the Trust. *See Gowdy*, ¶ 41, 455 P.3d at 1211; 90 C.J.S. Trusts § 271 (August 2023 Update) ("An action does not violate a no contest clause if the plaintiff does not assert any interest in the trust other than that provided by its express terms and does not contest, dispute, or call into question the trust agreement's validity."). Thus, David's lawsuit was not a legal challenge to the Trust.

[¶22] The Trustee also asserts David's lawsuit was an attempt to impair the function, operation, or asset distributions of the Trust by delaying the final distribution and forcing the Trust to incur litigation expenses. As the Trustee points out in its brief, "impair" means: "to diminish in function, ability, or quality; to weaken or make worse." *Merriam Webster Dictionary*, https://www.merriam-webster.com/dictionary/impair (2023). David's lawsuit did not seek any damages from Trust assets. It did not seek to weaken the Trust, diminish its assets, or change or delay the asset distribution. Instead, the lawsuit sought to enforce the Trust's provisions relating to accountings and instructions for dividing assets. Although the Trustee made a discretionary decision to delay final distribution pending the litigation, looking at the intent of David's lawsuit, as determined from the complaint, it was not an attempt to impair the function, operation, or asset distribution of the Trust in violation of Paragraph 10.6.

[¶23] Paragraph 10.6 authorizes the Trust to pay for litigation costs incurred in the defense of a challenge to the Trust. Some of the litigation expenses in this case were incurred through the prosecution of the counterclaim seeking to disinherit David. However, David's lawsuit was not a challenge to the Trust, and it did not necessitate the filing of a claim to disinherit him. Filing the lawsuit to remove the Trustee was not an attempt to impair the function or operation of the Trust by forcing it to incur litigation expenses and did not violate Paragraph 10.6.

[¶24] The district court erred when it found David's lawsuit to remove the Trustee triggered the no-contest clause in Paragraph 10.6. We reverse and remand with instructions to enter summary judgment in David's favor on the Trustee's counterclaim.

## CONCLUSION

[¶25] No-contest clauses are enforced according to their terms. We will not read terms into them that are not there. The no-contest clause in this case did not completely prohibit all litigation, and the trustee removal provisions were not mandatory and exclusive. The lawsuit to remove the trustee for alleged breaches of fiduciary duties was not a challenge to the Trust or an attempt to impair the function or operations of the Trust. The district court erred when it found the lawsuit to remove the Trustee triggered the no-contest clause. We reverse and remand with instructions to enter summary judgment in favor of the beneficiary, David Spurlock, on the Trustee's counterclaim.